**Ruby O. PORTER, Plaintiff-Appellant,**

v.

**Brock ADAMS et al.,**
**Defendants-Appellees.**

**No. 79–3635.**

United States Court of Appeals,
Fifth Circuit.
Unit A

March 13, 1981.

---

Joseph W. Thomas, T. Carey Wicker, III, New Orleans, La., for plaintiff-appellant.

John P. Volz, U. S. Atty., Michaelle F. Pitard, Bill Baity, Asst. U. S. Attys., New Orleans, La., for defendants-appellees.

Before WISDOM, RUBIN and SAM D. JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

Mrs. Ruby O. Porter, a black, formerly employed by the United States Coast Guard, brought this action under § 717 of Title VII, 42 U.S.C. § 2000e–16, alleging that her employer had discriminated against her because of her race. She appeals the district court's dismissal of her suit and its refusal to grant a preliminary injunction that would protect her ability to obtain the full relief she seeks. We affirm the dismissal, although in part for somewhat different reasons than those assigned by the district court, but remand this case for further findings and a ruling on the plaintiff's motion for a preliminary junction.

I.

The facts are not in dispute. In June 1977, Mrs. Porter filed an Equal Employment Opportunity (EEO) complaint with the Coast Guard charging that her supervisor, Mrs. Winifred Scott, had discriminated against her because of her race. In September of the same year, because of actions taken by Mrs. Scott allegedly in response to the filing of that complaint, Mrs. Porter filed a charge of reprisal, a form of action different from the filing of an EEO complaint.[1] Mrs. Porter withdrew the June

---

1. The distinctions between an EEO complaint and a charge of reprisal are described in Part II of this opinion.

1977 complaint after administrative proceedings resulted in a settlement. The charge of reprisal, however, was investigated by the Coast Guard's Office of Civil Rights, which determined that the charge had merit and recommended remedial action. Mrs. Porter alleges that the Coast Guard has never taken that remedial action despite her repeated entreaties to both the Department of Transportation and the Civil Service Commission.

In June 1978 and July 1979, Mrs. Porter filed two additional EEO complaints asserting new instances of discrimination. She alleged that the Coast Guard continued reprisal for filing her complaint; that she was reassigned to a new "deadend" position and that her former position was eliminated. These complaints are presently running the course of administrative proceedings.

In November 1978, Mrs. Porter filed this suit joining as defendants Mrs. Scott, various other Coast Guard officials, and Brock Adams, Secretary of the Department of Transportation, the department that oversees the Coast Guard. The complaint, as amended, contains substantially all the allegations of discrimination found in Mrs. Porter's September 1977 charge of reprisal and in the June 1978 and July 1979 EEO complaints. Mrs. Porter sought reinstatement to her former position, injunctive relief against further discrimination, compensatory and punitive damages, and attorney's fees. When, as mentioned, the Coast Guard decided to eliminate her former position in the spring of 1979, Mrs. Porter sought a preliminary injunction to block that action.[2]

After trial before a magistrate, the district court dismissed Mrs. Porter's suit. Insofar as the suit involved claims that were the subject of her June 1978 and July 1979 EEO complaints, the court held that it was untimely because Mrs. Porter had failed to exhaust her administrative remedies. To the extent that Mrs. Porter urged claims that were part of her June 1977 complaint, the suit was barred because of the administrative settlement. As to those claims that arose from the acts she had complained of in her charge of reprisal, the court decided that they should be remanded to the agency for consideration along with the two pending EEO complaints. In the court's view, those claims were all inextricably intertwined and postponement of the reprisal claim was preferable to piecemeal judicial review. The court did not rule on Mrs. Porter's motion for a preliminary injunction.

II.

A.

Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, under which this action was brought, prohibits discriminatory employment practices by most federal agencies, including the Coast Guard. This section gives the Civil Service Commission the power to enforce the section and authorizes the Commission to issue rules and regulations providing procedures for intra-agency review of all complaints of discrimination made by employees and applicants for employment.[3] A complainant may

2. Until September 29, 1978, Mrs. Porter was a Personnel Staffing Specialist, GS–212–7. On that date, the Coast Guard appointed her Motor Vehicle Program Coordinator, a position with the same rank and pay scale but "deadend" in Mrs. Porter's view. The transfer was necessary for the good of the department, according to the Coast Guard, because of the deterioration in the working relationship between Mrs. Porter and Mrs. Scott. In March of the following year, the Coast Guard decided to reorganize the department in which Mrs. Porter had formerly worked. Her old position was abolished and a new one, at a higher GS grade, was created. Mrs. Porter sought to block the Coast Guard from hiring anyone to fill the new posi-

tion and to force the Coast Guard to reassign her to her old position.

3. These rules were originally codified at 5 C.F.R. §§ 713.201–.283 (1978). Reorganization Plan No. 1 of 1978, 43 Fed.Reg. 19,807, 92 Stat. 3781, prepared and promulgated by President Carter under 5 U.S.C. §§ 901–912, consolidated all federal equal employment opportunity activities in one agency, the Equal Employment Opportunity Commission (EEOC). The plan transferred to the EEOC all enforcement and related functions formerly vested in the Civil Service Commission under § 717 of Title VII, 42 U.S.C. § 2000e–16. As a result, the rules and regulations were recodified, without any impor-

bring a civil action under the section only after final administrative action has been taken or after certain statutorily defined periods have elapsed.[4]

Mrs. Porter recognizes that, with respect to the claims stated in her June 1978 and July 1979 EEO complaints, none of the prerequisites to judicial review required by § 717 had been satisfied at the time this action was filed. Similarly, she does not challenge the dismissal of those claims listed in her June 1977 administrative complaint, since those have already been settled. Thus, she limits this appeal to the dismissal of those claims originally listed in her September 1977 charge of reprisal.

The exhaustion requirement, mentioned above, is found in § 717(c) and is an absolute prerequisite to suit under that section. *See Brown v. GSA*, 1976, 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402, 411. Section 717(c) allows a civil action to be filed only after the agency has taken "final action" on a "complaint of discrimination" or, if no "final action" is taken, after 180 days have elapsed from the filing of the complaint of discrimination. In either case, the sine qua non for civil action is the filing of a complaint. Since the statute gives the Civil Service Commission the authority to set up the administrative machinery for dealing with complaints of discrimination, a fortiori the Civil Service Commission has the authority to determine what constitutes the filing of a complaint within the meaning of § 717. The central question then is whether the Civil Service Commission intended a charge of reprisal to function as a complaint providing a path to judicial review. A close examination of the regulations dealing with reprisal actions convinces us that the Civil Service Commission did not so intend.

A federal employee who believes that reprisal actions have been taken against her for filing an EEO complaint has two ways to raise her grievance: she may file a new EEO complaint or she may file a charge of reprisal. 5 C.F.R. §§ 713.261–.262 (1978). The administrative procedures attached to each differ substantially. To file an EEO complaint, an employee must first seek informal counseling with one of the agency's EEO counselors; if this proves unhelpful, the complaint is formally filed with the agency; after investigation and further attempts at conciliation, the employee has the option to request a trial-type hearing before an examiner who is not an employee of the agency; and finally, the head of the agency, or his designate, issues a final decision on the matter. *Id.* §§ 713.211–.222. This final decision is the "final action" that gives an employee the right to bring a civil action.[5] In contrast, the charge of reprisal requires no informal counseling, no attempts at conciliation, and provides no option for a trial-type hearing. Instead, upon receipt of the charge in writing, the agency

tant changes, at 29 C.F.R. §§ 1613.201–.283 (1980). Because virtually all the administrative procedures important to our discussion were undertaken under the old regulations, we cite them, rather than the new ones, throughout this opinion.

4. 42 U.S.C. § 2000e–16(c) provides:
   Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the

department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

5. Although not bound to do so, a complainant has the option, at this stage, to appeal to the Civil Service Commission rather than file a civil action. If the complainant chooses this course, the Commission's decision furnishes the necessary "final action".

must, within 15 days, investigate the charge, take action if necessary, and report the charge and action taken to the Civil Service Commission. If the agency takes no action within 15 days, the employee can go directly to the Civil Service Commission, which can require the agency to take whatever action it deems appropriate. *Id.* § 713.262(b).

As is clear from the regulations, the charge of reprisal is an alternative to the EEO complaint, a shortcut providing quicker redress for that particular type of discrimination than the formal complaint affords. To hold that it also provides a shortcut to judicial review, however, would erode the carefully structured scheme for resolving charges of discrimination within federal agencies. Most, if not all, employees who feel that they were victims of reprisal would file charges of reprisal if it allowed them to bypass the more involved procedures—informal counseling, investigation, attempts at conciliation, and trial-type hearing—that accompany the filing of a formal complaint. As *Brown v. GSA* recognized, those procedures should not be easily circumvented, for they are part of the "careful blend of administrative and judicial enforcement powers" envisioned by § 717. 425 U.S. at 833, 96 S.Ct. at 1968. Those procedures allow the parties to explore and develop the facts, increasing the likelihood of an intra-agency resolution of the employee's grievances before resort to litigation becomes necessary. And conciliation, rather than litigation, is a recognized goal of Title VII. *See, e. g., Dent v. St. Louis-S.F. Ry.*, 5 Cir. 1969, 406 F.2d 399, 402; *Macklin v. Spector Freight Systems, Inc.*, D.C.Cir. 1973, 478 F.2d 979, 994 n.30.

Further evidence that the regulations do not contemplate judicial review of a charge of reprisal is found in 5 C.F.R. § 713.281 (1978). That section, which deals with the right to file a civil action, speaks only of judicial review after final action on a complaint; it makes no mention of charges of reprisal.

█ We therefore conclude that the filing of a charge of reprisal under 5 C.F.R. § 713.262(b) (1978) does not provide a route to judicial review. This decision imposes no unusual hardship on victims of reprisal. It merely presents them with a choice between, on the one hand, the opportunity for an expedited administrative resolution of their grievances without judicial review, and, on the other hand, the opportunity for judicial review but only after more protracted administrative proceedings. Of course if the employee who files a charge of reprisal rather than a complaint is not satisfied with the results of that procedure, he may still file an EEO complaint that could ultimately culminate in a civil action.

### B.

At oral argument, appellant raised a contention not asserted in her brief. She argued that reprisals are not covered by § 717, but rather by the fifth amendment, and therefore her claim faces no exhaustion requirement at all. Mrs. Porter points to § 705 of Title VII, 42 U.S.C. § 2000e–4, which specifically provides that reprisals by private employers are unlawful, and compares it to § 717, which makes no mention of reprisals. The reasons for this exclusion, in her view, is that reprisals by the federal government were always unlawful under the fifth amendment and that therefore Congress did not need to create an action under Title VII for that particular form of discrimination against federal employees.

█ The argument cannot stand. The failure to outlaw reprisals specifically in § 717 is not proof that that section does not prohibit reprisals. The draftsmanship of § 717 is different from that of the two sections in Title VII that prohibit discrimination by private employers. Section 717 is drafted broadly. It states: "All personnel actions . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." Sections 704 and 705, 42 U.S.C. §§ 2000e–3 and 2000e–4, are more narrowly drawn. There is no general proscription against discrimination. Rather, those sections make unlawful only specific types of employment discrimination by private employers. The reasonable conclu-

sion, therefore, is that by drafting § 717 to prohibit "any discrimination", Congress intended to bar the federal government from engaging in all those forms of discrimination identified in §§ 703 and 704, and others as well. Furthermore, this Court has held, although in a slightly different context, that the 1972 amendments extending the protections of Title VII to federal employees, including § 717, were intended to give federal employees the same rights as private employees. *Parks v. Dunlop*, 5 Cir. 1975, 517 F.2d 785, 787; *accord Douglas v. Hampton*, D.C.Cir. 1975, 512 F.2d 976.

Because we conclude that § 717 bars reprisals against federal employees who file charges of discrimination, appellant must bring her action under that section. Even if, as appellant contends, the fifth amendment would have afforded her a *Bivens* action for those reprisals prior to the enactment of § 717,[6] such an action is no longer available because § 717 is now the exclusive remedy for charges of discrimination brought against federal employers. *Brown v. GSA*, 425 U.S. at 835, 96 S.Ct. at 1969.

### III.

■ The appellant also appeals from the district court's failure to grant her motion for a preliminary injunction. The district court did not rule on this motion, apparently believing that it had no power to grant such an injunction once appellant's suit was dismissed. This Court has held that Title VII gives federal district courts the authority to grant preliminary injunctions sought by federal employees who have not yet fully exhausted their administrative remedies. *Parks v. Dunlop*, 5 Cir. 1975, 517 F.2d 785, 787.[7] Of course, the traditional considerations that inform decisions concerning preliminary injunctive relief—irreparable harm, the likelihood of success on the merits, balancing of the equities, and the public interest—still apply.[8] *See Morgan v. Fletcher*, 5 Cir. 1975, 518 F.2d 236, 239. The record does not provide us with enough information to consider these issues. We therefore must remand to the district court for findings and a ruling on appellant's motion.

The order of the district court dismissing appellant's complaint is AFFIRMED, but appellant's prayer for a preliminary injunction is REMANDED for further proceedings not inconsistent with this opinion.

**6.** *See generally* Lehmann, *Bivens and Its Progeny: The Scope of a Constitutional Cause of Action for Torts Committed by Government Officials*, 4 Hastings Const.L.Q. 531 (1977).

**7.** The government argues that *Brown v. GSA*, 1976, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 compels us to reconsider *Parks*. We disagree. *Brown* held that § 717 is the exclusive remedy available to federal employees who wish to bring claims of discrimination against their employers. In the process the Court reiterated the exhaustion requirements found in § 717 as evidence that Congress intended § 717 to provide the only means of access to the courts. But *Brown* did not deal at all with the availability of preliminary injunctions before exhaustion under Title VII, an issue on which the lower federal courts disagree, *see Manning v. Trustees of Tufts College*, 1 Cir. 1980, 613 F.2d 1200, 1202 & n.1, and on which, before *Brown*, the Supreme Court had at least once declined to rule. *See Drew v. Liberty Mutual Ins. Co.*, 5 Cir. 1973, 480 F.2d 69, *cert. denied,* 1974, 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239. We cannot believe that, by referring to the exhaustion requirement in an unrelated context, the Court intended to decide the issue in *Brown*.

**8.** The appellant, at oral argument, called the Court's attention to *Murry v. American Standard, Inc.*, 5 Cir. 1973, 488 F.2d 529, which held that irreparable harm is not a prerequisite to preliminary injunctive relief under Title VII. More recent cases decided by this Court have recognized, however, that a later Supreme Court decision, *Sampson v. Murray*, 1974, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166, changed that rule, at least insofar as federal employees are concerned. *E.g., Garza v. Texas Educ. Foundation, Inc.*, 5 Cir. 1978, 565 F.2d 909; *Morgan v. Fletcher*, 5 Cir. 1975, 518 F.2d 236; *Parks v. Dunlop*, 5 Cir. 1975, 517 F.2d 785. Those cases have found that irreparable injury is an essential prerequisite to preliminary injunctive relief for federal employees under Title VII.