**Selvish CAPERS**

v.

**William J. HENDERSON, et al.**

**No. Civ.A. 00–1515.**

United States District Court, E.D. Louisiana.

March 28, 2001.

Arthur Anthony Lemann, IV, Arthur A. Lemann & Associates, New Orleans, LA, for plaintiff.

Orelia E. Merchant, U.S. Attorney's Office, New Orleans, LA, for defendants.

### ORDER AND REASONS

WELLS–ROBY, United States Magistrate Judge.

Before the Court is a **Motion to Dismiss (doc. # 4)** filed by the defendants, William J. Henderson, Postmaster General, and the United States Postal Service ("defendants"), seeking to dismiss the plaintiff's Title VII racial discrimination claim under Fed.R.Civ.P. 12(b)(1) and the plaintiff's Title 39 U.S.C. § 409 erroneous discharge claim under Fed.R.Civ.P. 12(b)(6).[1]

---

1. On November 16, 2000, the parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) (doc. # 8).

## I. Factual Summary

Selvish Capers, ("Capers") is a former employee of the United States Postal Service. On May 23, 2000, Capers filed suit in this Court against the United States Postal Service and William J. Henderson, in his capacity as the Postmaster General. ("defendants"), alleging racial discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), Title 42 U.S.C. § 2000e–16(a) and erroneous discharge pursuant to Title 39 U.S.C. § 409.

Capers alleges that on March 16, 1999, the Postal Service charged him with unacceptable conduct, consisting of allegedly forging signatures on grievance settlement documents in exchange for payment and resolution of postal debts.[2] As a result of the charges, Capers claims that he filed a grievance with the postal service in April 1999, pursuant to Article 16 of its Collective Bargaining Agreement. He states that he was ultimately terminated on December 27, 1999, when the Regular Arbitration Panel denied his grievance.

Capers alleges that the arbitration proceeding was devoid of due process and was arbitrary and capricious in that it sustained his discharge without sufficient evidence of wrongdoing. Capers seeks a declaratory judgment from this Court, declaring that the defendants violated the terms of the Collective Bargaining Agreement by discharging him without good cause as required by the agreement.

Additionally, Capers alleges that on April 22, 1999, two Caucasian delivery supervisors were found guilty of timecard falsification, an offense allegedly more substantial than the offense he was charged

---

2. See Rec. doc. # 1, Plaintiff's complaint at ¶ 8, p. 3.

with.[3] According to Capers, the supervisors, however, were only placed on a short administrative leave. Thus, he alleges that he filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 20, 1999. He states that the EEOC dismissed the complaint on March 20, 2000, and that all jurisdictional prerequisites to the institution of suit under Title VII have therefore been fulfilled.

The defendants now move the Court to dismiss the plaintiff's complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. First, the defendants contend that under Rule 12(b)(1), this Court lacks subject matter jurisdiction over the Title VII claims, because the plaintiff failed to timely exhaust his administrative remedies prior to filing suit. Secondly, the defendants argue that the plaintiff's erroneous discharge claim should be dismissed under Rule 12(b)(6), because he fails to state a claim under Title 39 U.S.C. § 401 on which relief can be granted.[4]

## II. *The Rule 12(b)(1) Standard*

A motion under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996).

■ When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. Under Rule 12(b)(1), a court has wide discretion to review affidavits, and other documents outside of the pleadings, as well as to conduct a limited Evidentiary Hearing, in order to resolve disputed jurisdictional facts. In such instances, a court's reference to evidence outside of the pleadings does not convert the motion to a Rule 56 summary judgment motion. *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995).

■ However, a court is required to convert a Rule 12(b)(1) Motion to Dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. *Holt,* 46 F.3d at 1003. The jurisdictional question is deemed to be intertwined with the merits of the case, if the same statute which provides the court with subject matter jurisdiction, also forms the basis for a substantive claim. *Id.*

## III. *Title VII*

### A. *Timely Exhaustion*

■ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.,* prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment. Title VII grants an aggrieved federal employee the right to file suit in federal district court. *See* 42 U.S.C. § 2000e–16 (c). However, before bringing suit, an employee must exhaust his administrative remedies against his federal employer. *Brown v. General Servs. Admin.,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

If a federal employee fails to exhaust his administrative remedies, the district court

---

3. *See id.* at ¶ 14.

4. *See* Rec. doc. # 4, Defendant's Motion to Dismiss.

cannot adjudicate the employee's Title VII claim. *See National Ass'n of Gov't Employees v. City Pub. Serv.*, 40 F.3d 698, 711 (5th Cir.1994) ("[C]ourts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies").[5] *See also Porter v. Adams*, 639 F.2d 273, 276 (5th Cir.1981) (noting that exhaustion is "an absolute prerequisite" to suit under § 2000e-(16)).

Under the purview of Title VII, the EEOC has promulgated regulations designed to resolve claims of discrimination at the administrative level. These regulations set forth procedures by which federal employees must pursue charges of discrimination. The applicable provision specifically provides that: "an aggrieved person must initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory or in the case of personnel action within 45 days of the effective date of the action." *See* 29 C.F.R. § 1614.105(a)(1).

The defendants contend that Capers failed to timely and properly exhaust his administrative remedies, in so much as he failed to contact an EEO counselor within 45 days of April 30, 1999, the effective date of removal. The plaintiff, on the other hand, contends that the effective date of the decision to terminate his employment did not occur until the arbitration concluded on December 27, 1999, and that he contacted the EEO counselor prior to that date, on September 20, 1999.[6]

In this Circuit, an ultimate employment decision includes such acts "as hiring, granting leave, discharging, promoting, and compensating." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir.

1997), *cert. denied*, 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997). In the instant case, the record establishes that on April 23, 1999, the postal service issued a Letter of Decision, sustaining the decision to remove the plaintiff from his employment. The Letter of Decision stated in bold print: "[y]our removal will be effective Friday, April 30, 1999." The letter was not ambiguous. It clearly advised the plaintiff of the effective date of termination.

The plaintiff concedes, however, that he did not contact the EEO counselor until September 20, 1999—some 98 days after he was notified of the decision to terminate his service. The Court finds that Capers failed to contact the EEO counsel within 45 days of the effective date of his removal. He therefore did not timely exhaust his administrative remedies.

### B. *Equitable Tolling*

■ The plaintiff alternatively asserts that should the Court find that he contacted the EEO counselor after the 45–day time limit, the time limitation period should be equitably tolled. However, failure to notify the EEO counselor within the 45–day period bars a claim, absent a defense of waiver, estoppel, or equitable tolling. *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 476–77 (5th Cir.1991). Equitable tolling is appropriate when, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim. *Pacheco v. Rice*, 966 F.2d 904, 906–907 (5th Cir.1992). Further 29 C.F.R. § 1614.105(a)(2) provides:

---

**5.** *See also Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir.1992); *Templeton v. Western Union Tel. Co.*, 607 F.2d 89, 91 (5th Cir.1979) (per curiam).

**6.** *See* Plaintiff's Memorandum in Opposition to Motion to Dismiss, p. 4, at Rec. doc. # 9.

"(2) The agency or the Commission shall extend the 45–day limit . . . when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission."

Equitable tolling also applies: (1) during the pendency of an action before a state court that has jurisdiction over the subject matter of the suit, but that is the wrong forum under state law; (2) until the claimant knows or should know the facts giving rise to her Title VII claim; and (3) when the EEOC misleads the claimant about the nature of her rights under Title VII. *See Blumberg v. HCA Management Co.,* 848 F.2d 642, 644 (5th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989); *Chappell v. Emco Mach. Works Co.,* 601 F.2d 1295, 1302 (5th Cir. 1979). The plaintiff bears the burden of proving that equitable tolling is warranted. *Hood v. Sears Roebuck and Company,* 168 F.3d 231, 232 (5th Cir.1999).

In the instant case, Capers suggests that tolling should apply because he received inadequate notice of his right to sue. Capers contends that because the letter stated that he would "remain on the rolls," if he appealed the decision, it was reasonable to assume that the "effective date of the decision" would not occur until after the arbitration procedure. The Court, however, finds that this contention lacks merit.

The Letter of Decision provided in pertinent part:

**"Your removal will be effective Friday, April 30, 1999.**

As a preference eligible, you have a right to appeal *this decision* to the Merit Systems Protection Board, . . . within thirty (30) calendar days *from the effective date of this decision.* If you belief that the action is based, in whole or in part, on discrimination you have the option of filing an appeal with MSPB, or filing an EEO complaint with the Postal Service, but not both.

Before filing an EEO complaint, you must bring the matter to the attention of [the] EEO Specialist . . . within forty-five (45) calendar days of the effective date *of this decision. . . .* Attached for your reference is an MSPB appeal form. If you appeal *this action,* you will remain on the rolls, but in a non-pay, non-duty status after the effective date of *this action,* until disposition of your case has been reached either by settlement or through exhaustion of your administrative remedies." [7]

The Letter of Decision clearly advised Capers that he had the right to appeal either to the Merit Systems Protection Board ("MSPB") within 30 days or by filing an EEO complaint within 45 days of *"this decision."* [8] The notice further instructed that only an appeal through either of the two avenues would place the plaintiff's employment on a non-pay, non-duty status. Indeed, the only available appeal avenues that were provided for in the notice were through the EEOC or the MSPB, not the union. Capers' assumption that proceeding through the union's grievance procedure (in lieu of appealing to the EEOC or MSPB) would also place his

---

7. *See* Defendants' Exhibit "A", Letter of Decision, p. 5 (emphasis added).

8. *See id.*

employment on a non-pay, non-duty status is not supported by the Letter of Decision. His error is not grounds for equitable tolling. *See Maddox v. Runyon*, 139 F.3d 1017 (5th Cir.1998) (failure to timely file a charge with the EEOC, pending the resolution of a union's arbitration procedure, does not excuse an untimely Title VII action).

Capers also seems to suggest that tolling should apply because the defendants allegedly concealed the facts giving rise to his claim until September 1999. Specifically, he contends that on May 4, 1999, the union requested information from the defendants to determine whether other postal employees received preferential treatment for alleged race-based motives. He contends, however, that the defendants intentionally delayed divulging the information until September 1999. Capers states that when he received this information, the defendants' discriminatory motive became apparent and he contacted the EEO counselor.

The Court notes, however, that while the plaintiff suggests that he did not have sufficient knowledge of his claim until September 1999, this assertion is contradicted by the record evidence. The April 23, 1999 Letter of Decision clearly indicates that, as early as March 29, 1999, Capers openly alleged that cases similar to his had not resulted in removal and that the defendants' decision to terminate him was merely a pretext for racial discrimination.[9] The plaintiff's second and final basis for equitable tolling is therefore without merit.

Having failed to set forth any facts that would warrant equitable tolling, the Court finds that it lacks subject matter jurisdiction to adjudicate the plaintiff's Title VII claims. The defendants' motion to dismiss

under Fed.R.Civ.P. 12(b)(1) is therefore granted.

## IV. *Wrongful Discharge Claim*

■ The defendants also seek dismissal of Capers' erroneous discharge claim filed pursuant to Title 39 U.S.C. § 409, on the ground that the Civil Service Reform Act, Title 5 U.S.C. § 7501, *et seq.* is the exclusive remedy for the plaintiff to challenge an adverse employment action. The plaintiff, on the other hand, argues that the courts have supported a non-statutory basis for review of federal employment decisions.

Title 39 U.S.C. § 409(a) provides that "the United States District Courts shall have original but not exclusive jurisdiction over all actions brought against or by the Postal Service." In *Christian v. New York State Department of Labor*, 414 U.S. 614, 94 S.Ct. 747, 39 L.Ed.2d 38 (1974), the Supreme Court held that while the employing agency's decision is not statutorily subject to judicial review, it does not preclude review of the procedure used by the agency to reach the determination. *Christian*, 414 U.S. at 622, 94 S.Ct. 747.

The standard of non-statutory judicial review was also set forth in *Vigil v. Post Office Department of the United States*, 406 F.2d 921 (10th Cir.1969). The Court noted that it may only inquire whether substantial compliance was made with the applicable procedures and whether the Postal Service's actions were arbitrary and capricious or not supported by substantial evidence. *Id. See also Withers v. United States Postal Service*, 417 F.Supp. 1 (W.D.Mo.1976).

Congress, however, subsequently enacted the Civil Service Reform Act of 1978, ("CSRA") which effectively established a new framework for evaluating adverse employment actions against federal employ-

---

**9.** See Letter of Decision, p. 2.

ees. As a result, in *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the United States Supreme Court held that any statutory or non-statutory right to judicial review of adverse personnel actions that postal employees may have enjoyed was abrogated by the CSRA. *Fausto*, 484 U.S. at 454, 108 S.Ct. 668. *See also Witzkoske v. U.S. Postal Service*, 848 F.2d 70 (5th Cir.1988).

As a preference eligible, the plaintiff is statutorily restricted to the procedure set forth in the Civil Service Reform Act, 5 U.S.C. § 7501, *et seq.*, and therefore may not now seek review in this Court of the defendants' decision to remove him to the exclusion of the CSRA requirements.[10] *Fausto*, 484 U.S. at 454, 108 S.Ct. 668; *Witzkoske*, 848 F.2d at 71 n. 2.[11]

Accordingly, for the reasons assigned herein,

**IT IS THEREFORE ORDERED** that the defendant's **Motion to Dismiss (doc. # 4)** is hereby **GRANTED** and the plaintiff's complaint filed pursuant to Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000–e(16)(a) and Title 39 U.S.C. § 409 is **DISMISSED WITH PREJUDICE.**

---

**10.** Chapters 75 and 77 of the CRSA set forth certain procedural rights in connection with adverse personnel actions against civil service "employee" based on misconduct. For purposes of Subchapter II of the Chapter 75, which governs major adverse actions, including discharge, "employee" means

    (A) an individual in the competitive service ...; and

    (B) a preference eligible in an Executive agency in the excepted service, and a preference eligible in the United States Postal Service ... 5 U.S.C. § 7511(a)(1).

    Chapter 75 grants the right to appeal adverse decisions to the Merit System Protection Board. *See* 5 U.S.C. § 7513. Chapter 77 sets forth the procedures for appeal to the Merit System Protection Board and provides for judicial review of decisions of the Board by the United States Court of Appeals for the Federal Circuit. *See* 5 U.S.C. §§ 7701–7703.

**11.** The Court notes that the defendants raised an alternative argument that Title VII preempts the plaintiff's erroneous discharge claim. However, in light of the defendants' supplemental memorandum addressing the CSRA and the Court's finding regarding same, an analysis of the preemption issue is unnecessary.