United States Court of Appeals
Fifth Circuit

**F I L E D**

November 19, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 03-60709

**BRAZORIA COUNTY, TEXAS;
DAVID CHRISTIAN, former Justice of the Peace of
Brazoria County, Texas (Precinct 2),**

Petitioners-Cross-Respondents,

versus

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION;
UNITED STATES OF AMERICA,**

Respondents-Cross-Respondents,

and

**KYLE KNIGHT,**

Intervenor-Cross-Petitioner.

**Petitions for Review of a Decision of
the Equal Employment Opportunity Commission**

Before BARKSDALE and PICKERING, Circuit Judges, and LYNN[*], District
Judge.

RHESA HAWKINS BARKSDALE, Circuit Judge.

Lacking jurisdiction over Kyle Knight's cross-petition, the
sole issue at hand is whether, under the Government Employee Rights
Act (GERA), 42 U.S.C. § 2000e-16a to 16c (formerly codified at 2
U.S.C. §§ 1201, 1202, 1220), the County and former justice of the
peace David Christian (jointly, the County) were properly held

---

[*] District Judge of the Northern District of Texas, sitting by
designation.

liable by the EEOC for claimed retaliation against Knight. That decision had two factual bases: ostracism during Knight's employment; and a letter written by Christian, after Knight's resignation, critical of Knight's husband. Neither basis was the ultimate employment decision required for retaliation. **PETITION GRANTED; CROSS-PETITION DISMISSED**.

I.

Christian was elected a justice of the peace in 1991. That year, he hired Knight as one of his five clerks. Knight resigned in November 1996 and filed a complaint with the EEOC that month (the letter at issue was written the next month); the complaint was amended to state a claim under GERA.

The complaint was referred by the EEOC to an administrative law judge (ALJ), who understood the complaint as presenting two claims. Knight alleged: Christian had created a hostile work environment through conduct constituting sexual harassment; and, after she complained about that conduct to Christian and to a county official, Christian retaliated against her. There were five predicates for the retaliation claim. Three of them (not at issue here) were: failure to promote; placing Knight on probation; and constructive discharge. At issue are two bases: ostracism; and the December 1996 letter from Christian to the sheriff about Knight's husband. The facts behind each are described *infra*.

The ALJ ruled in favor of the County on all claims; Knight

2

appealed to the EEOC.  It affirmed the ALJ on:  no sexual harassment; and no retaliation due to either constructive discharge, failure to promote, or probation.  The EEOC partly reversed the ALJ on the retaliation claim, however, ruling that Christian had retaliated against Knight in ostracizing her and in writing the letter.  The final decision, issued on 2 July 2003, awarded Knight $20,500 in compensatory damages; $18,952.50 in attorney's fees; and $2759.73 in costs.

## II.

Before addressing the County's petition for review, we address Knight's cross-petition.  Because Knight filed a cross-petition, the Respondent EEOC did *not* file a brief, stating:  "The cross-petitions assure that the adverse positions of the real parties in interest in this matter will be ventilated before the Court".  Nevertheless, because of our pre-oral argument jurisdictional concerns about the cross-petition, we obtained supplemental briefing from the County, Knight, *and* the EEOC on that issue.

### A.

The County filed its petition on 27 August 2003.  On 16 September 2003, our court received two documents from Knight:  (1) a combined cross-petition for review, application to enforce, and motion for leave to intervene; and (2) a motion for extension of time to file the cross-petition.  On 13 October, the motion to

3

intervene and the motion for extension of time were granted; accordingly, the cross-petition was filed on 14 October.

The EEOC's decision in favor of Knight was pursuant to its jurisdiction over complaints brought under GERA. 42 U.S.C. § 2000e-16c(b)(1). Judicial review of the EEOC's 2 July 2003 decision is pursuant to "chapter 158 of Title 28". 42 U.S.C. § 2000e-16c(c). Under chapter 158, there is a 60-day period to file a petition for review of an agency order. 28 U.S.C. § 2344. That period "is jurisdictional and cannot be judicially altered or expanded". *Texas v. United States*, 749 F.2d 1144, 1146 (5th Cir.), *cert. denied sub nom. Interstate Commerce Comm'n v. Texas*, 472 U.S. 1032 (1985).

Sixty days from the EEOC's 2 July 2003 decision was Sunday, 31 August 2003; the following day was Labor Day. Therefore, a timely petition for review of the EEOC decision had to be filed no later than 2 September 2003. FED. R. APP. P. 26(a)(3), (4). Our court did not receive the cross-petition until 16 September 2003, and it was not filed until 14 October 2003. Assuming *arguendo* that the 16 September receipt date was the relevant date, it was outside the 60-day period.

The absence of jurisdiction is clear from the preceding. Nevertheless, some of the jurisdictional assertions made by Knight will be addressed. First, we may, of course, notice jurisdictional

4

defects *sua sponte*. *E.g., **Weekly v. Morrow***, 204 F.3d 613, 615 (5th Cir. 2000).

Second, our ability to consider jurisdiction is in no way hampered by the 13 October 2003 order granting Knight's motion to extend time to file the petition. We have most commonly confronted this issue when, after a motions panel denies a motion to dismiss for lack of jurisdiction, a merits panel dismisses on jurisdictional grounds. *E.g., **Mattern v. Eastman Kodak Co.***, 104 F.3d 702, 704 (5th Cir.), *cert. denied*, 522 U.S. 932 (1997); ***Browning v. Navarro***, 887 F.2d 553, 557 (5th Cir. 1989); *see also **Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.***, 746 F.2d 278, 283 n.2 (5th Cir. 1984), *on reh'g*, 784 F.2d 665 (5th Cir. 1986). As **Harcon Barge** stated: "A denial by a motions panel of a motion to dismiss for want of jurisdiction ... is only provisional". ***Id***. No authority need be cited for the fact that jurisdiction is *always* at issue; without it, a court is powerless to act. In this instance, no judicial authority can extend the time for filing the petition. *See **In re Bass***, 171 F.3d 1016, 1022 (5th Cir. 1999) ("All federal courts are courts of limited jurisdiction which, for the most part, derives from statutory grants of the Congress.").

Third, Knight cannot rely on her timely intervention in order to have our court review matters outside the scope of the County's petition. "If we permit an intervenor to raise additional issues for review, we contravene the sixty-day filing limit ... by

5

permitting filings as late as 90 days after the order...." *United Gas Pipe Line Co. v. FERC*, 824 F.2d 417, 436 (5th Cir. 1987) (such 90 days based on adding 60-day period for petition to 30-day period for intervention). *United Gas* held:

> Thus, intervenors in FERC review proceedings are bound by the issues raised in the petitions for review. With regard to the issues raised in the petitions, intervenors may fully argue for or against the Commission's position. However, the intervenors may not challenge aspects of the Commission's orders not raised in the petitions for review.

*Id*. at 437; *see also* *Texas Office of Public Utility Counsel v. FCC*, 183 F.3d 393, 421 n.39 (5th Cir. 1999). *But see* *Kansas City Southern Industries, Inc. v. ICC*, 902 F.2d 423, 434-35 (5th Cir. 1990). The same is true in this review of an EEOC order.

Although Knight's cross-petition was untimely and must be dismissed, her motion to intervene was timely; as intervenor, she may, of course, address issues raised by the County's petition. (Again, because of Knight's cross-petition, the EEOC did *not* file a brief.) Knight's application to enforce the EEOC order is a nullity because there is no statutory basis for jurisdiction over such an application.

B.

The County claims the EEOC's final decision was incorrect because neither the ostracism nor the letter was an ultimate employment decision. It contends further that Knight lacks Article

6

III standing to complain about the letter, because it only disparaged her husband. We address the GERA framework; then the County's standing argument; and, finally, the contention that the factual bases for the retaliation rulings are insufficient.

Our standard of review is set by GERA. In the light of the issues raised by the County, we can set aside the EEOC's final order only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law". 42 U.S.C. § 2000e-16c(d)(1).

1.

GERA provides protection against workplace discrimination to certain individuals exempted from protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Although Title VII's familiar protections extended to "employees", Title VII's definition of that term excluded certain groups. Pertinent to this case, Title VII provides:

> The term "employee" means an individual employed by an employer, *except* that the term "employee" shall *not* include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, *or any person chosen by such officer to be on such officer's personal staff*, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e(f) (emphasis added).

7

GERA, originally adopted as Title III of the Civil Rights Act of 1991, provides protection for those excluded from the definition of "employee". Closely mirroring the language from Title VII's above-quoted § 2000e(f), GERA provides that certain individuals (personal staff; those who serve at policymaking level; advisers on exercise of constitutional or legal powers) shall receive the "rights, protections, and remedies provided pursuant to [42 U.S.C. §] 2000e-16b". 42 U.S.C. § 2000e-16c(a). In turn, § 2000e-16b provides: "*All personnel actions* affecting ... the State employees described in [42 U.S.C. §] 2000e-16c ... shall be made free from any discrimination based on ... race, color, religion, sex, or national origin, *within the meaning of section 2000e-16*...." ***Id***. § 2000e-16b(a) (emphasis added). Section 2000e-16, found in the 1972 amendments to Title VII to provide protection for *federal employees*, provides: "All personnel actions affecting employees or applicants for employment ... shall be made free from any discrimination based on race, color, religion, sex, or national origin". 42 U.S.C. § 2000e-16.

Christian was an elected official; Knight, a member of his personal staff. *Cf.* **Clark v. Tarrant County, Texas**, 798 F.2d 736, 742 (5th Cir. 1986) (factors in personal staff exemption). Therefore, any relief was under GERA and its administrative procedure.

In the proceeding before the EEOC, the County conceded that GERA provides a claim for retaliation. For the first time in its reply brief here, however, it contends: (1) GERA does *not* provide a claim for retaliation; and (2) this contention goes to the EEOC's jurisdiction and, therefore, could be considered for the first time on appeal (not to mention, for the first time in a reply brief).

The line between a jurisdictional and merits question (*i.e.*, claim) can be blurred. *See, e.g.,* **Arbaugh v. Y&H Corp.**, 380 F.3d 219, 222-26 (5th Cir. 2004) (in Title VII context, applying precedent that threshold number of employees was a jurisdictional matter in district court). If we were to conclude that GERA did not provide a claim for retaliation, we would have to determine whether the issue is a matter of merits (subject to waiver) or jurisdiction (not subject to waiver).

Our precedent compels the conclusion that GERA provides a claim for retaliation. In **Porter v. Adams**, 639 F.2d 273 (5th Cir. Unit A 1981), we considered 42 U.S.C. § 2000e-16; as noted, that section protects certain *federal* employees from employment discrimination. (As also noted, this section was incorporated by GERA.) Section 2000e-16 does not specifically prohibit retaliation (or "reprisals", as **Porter** terms it). It does provide, however, that "*[a]ll personnel actions* ... shall be made free from *any discrimination* based on race, color, religion, sex, or national origin". 42 U.S.C. § 2000e-16 (emphasis added). Comparing §

9

2000e-16 (general ban on discrimination in federal employment) with other provisions (bans on specific forms of discrimination, including retaliation, by private employers), *Porter* held:

> The reasonable conclusion, therefore, is that by drafting [§ 2000e-16] to prohibit [the above-emphasized] "any discrimination", Congress intended to bar the federal government from engaging in all those forms of discrimination identified in §§ 703 and 704 [of Title VII], and others as well. Furthermore, this Court has held, although in a slightly different context, *that the 1972 amendments extending the protections of Title VII to federal employees ... were intended to give federal employees the same rights as private employees.*

*Porter*, 639 F.2d at 277-78 (emphasis added). *See also* **Ayon v. Sampson**, 547 F.2d 446, 450 (9th Cir. 1976) ("When these sections are read together, it is clear that Congress incorporated the protections against retaliation in its enactment of § 2000e-16.").

In short, § 2000e-16 bars retaliation. And, as noted again above, the GERA provision at issue, 42 U.S.C. § 2000e-16b, incorporates § 2000e-16. That GERA provision, § 2000e-16b, states: "All personnel actions ... shall be made free from any discrimination based on ... race, color, religion, sex, or national origin, *within the meaning of section 2000e-16 of this title*". 42 U.S.C. § 2000e-16b (emphasis added). Therefore GERA makes retaliation, within the meaning of Title VII, unlawful. *See* **Haddon v. Executive Residence at the White House**, 313 F.3d 1352, 1356-57 (Fed. Cir. 2002) (interpreting GERA's § 2000e-16b, when it was

10

earlier codified as 2 U.S.C. § 1202, and stating: "It is quite sensible to conclude that Congress intended for section 1202 ... to include reprisal".); *see also* 29 C.F.R. § 1603.102(a) (employees protected by GERA, "who believe they have been ... retaliated against", may file administrative complaint under GERA).

## 2.

The County claims Knight lacks standing to state a retaliation claim based on the letter concerning her husband. It concedes that this issue was *not* raised before the EEOC, but cites cases (*all involving appeals from district courts*, *not* petitions for review from agency decisions) that standing is always subject to being challenged. Re-stating its contention in its reply brief, it says: "[B]asic law on Article III standing requires that a party suffer an injury-in-fact in order to have standing, and this injury must be personal to the plaintiff".

The County's comments about Article III, while correct, are without application for the procedural posture at hand: *a petition for review of an EEOC order*. In other words, her attempted cross-petition aside, *Knight never invoked the jurisdiction of the federal courts*. The standing requirement is based on Article III's "case or controversy" requirement. Article III governs the federal courts; it has no application to this GERA EEOC administrative proceeding. "Administrative adjudications ... are not an article III proceeding to which either the 'case or controversy' or

11

prudential standing requirements apply; within their legislative mandates, agencies are free to hear actions brought by parties who might be without standing if the same issues happened to be before a federal court." *ECEE, Inc. v. FERC*, 645 F.2d 339, 349 (5th Cir. 1981). *See also Hydro Investors, Inc. v. FERC*, 351 F.3d 1192, 1197 (D.C. Cir. 2003) ("Administrative agencies need not adjudicate only Article III cases and controversies, but federal courts must.").

Instead, "*[a]dministrative standing analysis* must always begin with the language of the statute and regulations that provide for an administrative hearing". *ECEE, Inc.,* 645 F.2d at 350 (emphasis added). Because "standing" for a GERA proceeding before the EEOC is a matter of identifying the appropriate statutory harm (and not a constitutional limit on jurisdiction), we doubt whether the issue can be raised for the first time in our court. Moreover, we can readily imagine that the letter written about Knight's husband might have been unlawful retaliation *against Knight*. But we do not reach either the waivability, or the merits, of Knight's "standing" before the EEOC, because of our resolution, *infra*, of the County's third contention.

3.

*Regarding ostracism*, the EEOC considered Knight's testimony that, after she complained about Christian's conduct: he stopped speaking to her; when he had to address her, he did so in a curt and hostile tone; he told her that he no longer trusted her and

12

considered her disloyal; he stated that her job depended on her loyalty; in order to isolate her further, he would "buddy up" with his other clerks; and he secretly tape-recorded her.

*Regarding Christian's December 1996 letter* to the sheriff of Brazoria County about Knight's husband, also a County employee, Christian recounted how he obtained a sledge hammer from Mr. Knight and used it during a re-election campaign to drive posts for election signs. Christian wrote to the sheriff that, when he returned the hammer to Mr. Knight, Mr. Knight stated: "Keep the [s]ledge, the county will not miss it". According to the EEOC's decision: "The ALJ found that ... [Christian] attempted to have [Knight's] spouse arrested by falsely accusing him of stealing a sledgehammer that belonged to Brazoria County". The EEOC apparently agreed with this finding.

As stated above, GERA provides a claim for retaliation. As discussed, GERA's § 2000e-16b incorporates § 2000e-16, which in turn incorporates the substantive ban on retaliation found in § 2000e-3 (Title VII, for private employees). **Porter**, 639 F.2d at 277-78. The standard for retaliation under GERA is, therefore, the same as the familiar standard under Title VII for retaliation.

"A retaliation claim has three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took *adverse employment action* against the employee; and (3) a causal connection exists between that protected activity and the adverse

13

employment action." ***Mattern v. Eastman Kodak Co.***, 104 F.3d 702, 705 (5th Cir.) (emphasis added), *cert. denied*, 522 U.S. 932 (1997). The adverse employment action for the second step must be an *ultimate employment decision*. ***Id***. at 707. "'Ultimate employment decisions' include acts 'such as hiring, granting leave, discharging, promoting, and compensating'." ***Id***. (quoting ***Dollis v. Rubin***, 77 F.3d 777, 782 (5th Cir. 1995)). Because GERA creates a retaliation claim by a process of incorporating Title VII provisions, this "ultimate employment decision" applies in GERA cases.

Knight maintains, to the contrary, that the introductory "[a]ll personnel actions" in § 2000e-16b means that GERA extends to "retaliation" which falls short of an ultimate employment decision. First, it is unlikely that Congress would create a greater scope of protection for employees of certain state officials than it has for other employees. Second, and more importantly, the key provision in § 2000e-16b is: "All personnel ... shall be made free from any discrimination based on ... sex ... *within the meaning of section 2000e-16*". 42 U.S.C. § 2000e-16b(a) (emphasis added).

In addition, Knight maintains that ***Mattern*** may not be good law, because one month after ***Mattern*** was rendered, the Supreme Court decided ***Robinson v. Shell Oil Co.***, 519 U.S. 337 (1997). ***Mattern*** has, of course, been cited by our court post-***Robinson***. *E.g., **Zaffuto v. City of Hammond***, 308 F.3d 485, 492 (5th Cir.), *on*

14

*reh'g*, 313 F.3d 879 (5th Cir. 2002).  Moreover, **Robinson** did *not* address the standard for measuring whether an adverse employment action could support an actionable retaliation claim.  **Robinson** held:  for Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3, the bar on retaliating against "employees" included retaliating against former employees.  519 U.S. at 346.  This was because such a holding was "more consistent with the broader context of Title VII" than the alternative.  *Id*.  **Robinson** did *not* address what actions against either current or former employees could be the basis for a retaliation claim.  (Along this line, Knight also maintains that, **Mattern** aside, the found ostracism could constitute a hostile work environment.  As discussed, the ALJ and EEOC rejected the hostile work environment claim, which was premised on sexual harassment, *not* ostracism.  In short, this new ostracism-constitutes-hostile-work-environment assertion is *not* properly at issue.)

Although it agrees with the GERA-mandated standard of review we have applied, the dissent maintains the EEOC's retaliation decision should be upheld, based on the dissent's reading of **Robinson** and **Porter** and its view that deference is owed the EEOC's decision.  **Robinson** and **Porter** are addressed *supra*; they do *not* compel our applying a different retaliation standard.  Regarding deference *vel non* owed the EEOC's decision, neither Knight nor the County raised that subissue.  And, as noted, the Respondent EEOC

15

elected not to file a brief.  Had it done so, it might have raised that point, as well as others.  In any event, pursuant to the applicable standard of review, any deference that might be owed the EEOC's decision would *not* require upholding it, in the light of the different result compelled, as discussed above, by GERA's plain language, which reflects that Congress did *not* intend to create a greater scope of protection for employees of certain state officials than Congress has accorded other employees.

4.

Concluding that the ultimate employment decision requirement for Title VII applies in this GERA proceeding, the last step is to determine whether the facts surrounding the ostracism or the letter were ultimate employment decisions.  They are not.

For the claimed ostracism, the retaliatory activities did nothing more than affect conditions in the workplace.  None of the events listed by the EEOC are akin to the "hiring, granting leave, discharging, promoting, and compensating" examples listed in *Mattern*, 104 F.3d at 707.  (We note, as the County has repeatedly urged, that even courts that do not apply an "ultimate employment decision" standard have rejected retaliation on the basis of ostracism.  *E.g., Manatt v. Bank of America, NA*, 339 F.3d 792, 803 (9th Cir. 2003) ("Mere ostracism in the workplace is not grounds for a retaliation claim").)

16

The same applies to the letter. Coming *after* Knight's resignation, and not directed to making (or even influencing) any employment decision, including post-resignation, regarding Knight, the letter is not an "ultimate employment decision".

### III.

For the foregoing reasons, the County's petition is **GRANTED**; Knight's cross-petition is **DISMISSED**.

17

**Charles W. Pickering, Sr., concurring in part and dissenting in part**

I concur with the majority opinion that we have no jurisdiction of Knight's cross petition. I also agree with the majority that GERA provides protection against retaliation and that the attempt of the defendant Christian to have the appellant Knight's husband fired was properly before the EEOC. I do not agree, however, that the EEOC decision finding retaliation should be reversed. As to that part of the majority opinion, I respectfully dissent.

In order to make an appropriate decision as to the claim of retaliation, it is necessary to understand the factual background of this case. Knight testified that during the course of her employment, Christian consistently made sexual jokes, remarks and innuendos that she found offensive. She identified some eight instances of inappropriate conversation and three instances of inappropriate touching. She claimed that she was subjected to a sexually hostile work environment.

Knight complained of Christian relating that when he was a prison warden "men at the prison" would smell his former secretary's bicycle seat after she finished riding around the prison compound. Christian admitted telling of the incident but claimed his intent was to let his staff know he would not tolerate sexual harassment. Knight also complained that Christian had made a remark about another clerk having large breasts and that Knight was not even "in the running." Christian denied this conversation. Knight complained of Christian repeating stories of homosexual rape and sodomy while he was a prison warden. Knight complained of Christian jokingly offering to have sex with the female employees in order to help them lose weight. Christian admitted that he told the clerks that he had read an article that stated that you could lose

weight by having sex, but denied he had offered to have sex with the female employees. Knight

also complained of Christian jokingly offering to sexually molest his clerks so that they could

obtain a sexual harassment settlement from the county and split the proceeds. Christian admitted

jokingly making a proposal to that effect.

> The EEOC found that

> In July 1996, after [Christian] recounted the details of a death scene where the decedent had died while masturbating, [Knight] asked him not to again repeat the story because it was so sexually offensive. Shortly thereafter, [Knight] also complained to a county commissioner regarding [Christian's] claimed sexual harassment. After her complaints, [Knight] contended that [Christian] began a campaign of retaliation against her as evidenced by his shunning her; . . . additionally appellant claimed that all retaliatory actions, taken together, made working conditions impossible, forcing her to resign from her job on November 6, 1996. Appellant contended that after her resignation, the retaliation continued when [Christian] attempted to have her husband, a county worker, falsely arrested.

> Although the EEOC found that Christian's simulation of masturbation was "distasteful,

unprofessional, and in poor judgment",

> the ALJ found that while [Christian's] stories, comments and jokes were offensive to Appellant, this conduct, even viewed cumulatively, in the context of the totality of the circumstances, was not sufficiently severe and persuasive to rise to the level of sexual harassment.

The EEOC affirmed this finding. Knight also argued that the Administrative Law Judge (ALJ)

failed to take into consideration that Christian "requested pay raises for all of his staff [who

testified in his favor] prior to the hearing, and that he handed out $100 bills at the hearing to buy

lunch for the witnesses, . . ."

The EEOC reversed the ALJ as to the retaliation claim based on ostracism and attempting

to get Knight's spouse fired. The EEOC found "our review of the record indicates that most of

Appellant's claimed mental and physical problems developed after she reported the sexual

harassment, when [Christian] allegedly engaged in retaliation against her."  The EEOC further found

> that immediately after [Knight] complained about sexual harassment in July 1996, [Christian] began to shun and isolate her, enlisting the aid of co-workers to do so, and then tried to secretly tape record her.  In fact, contrary to the ALJ's finding, we find [Christian's] frequent remarks to Appellant that she was untrustworthy and disloyal suggesting that her work depended on her keeping quiet about the sexual harassment claim, is probative evidence of his animus.  Furthermore, we find that the respondent has failed to proffer a legitimate non-discriminatory reason for the conduct at issue . . . .

(citation omitted).  The EEOC found that Christian's ostracism of Appellant, which occurred on a continuous basis from July 1996 until her resignation in November 1996, was motivated by retaliatory animus and constitutes an impermissible act of reprisal."

The EEOC noted that "[t]he ALJ found the attempted arrest of Appellant's spouse . . . to be the most problematic aspect of Appellant's reprisal claim.  The ALJ found that the attempted arrest occurred after Appellant filed a complaint with the EEOC against [Christian] . . . and that [Christian] then attempted to have Appellant's spouse arrested by falsely accusing him of stealing a sledgehammer that belonged to Brazoria County."  (emphasis added).

The EEOC held

> We find that Appellant has standing to bring the instant claim because of her status as a 'former employee' who engaged in prior protected activity, and also because the action at issue was taken against her spouse.  Moreover, with respect to the claim itself, we find that it is actionable under the Commission's view of reprisal because the attempted arrest of a spouse by a named discriminating official is without question, an act which would 'reasonably be likely to deter the charging party, or others, from engaging in protected activity.'  In this regard, we note the un-rebutted testimony of Appellant's spouse wherein he stated that he perceived [Christian's] action to be a 'scare tactic' to deter [Knight] from pursuing her discrimination complaint. . . .  In reaching this conclusion, we find that Respondents provide no evidence to otherwise justify [Christian's] action, with the ALJ finding that [Christian] provided no credible pertinent testimony on this matter.

20

The final EEOC decision, issued on 2 July 2003, awarded Knight $20,500 in compensatory damages for the retaliation claim; $18,952.50 in attorney's fees; and $2759.73 in costs.

As noted by the majority, our standard of review is found in GERA. We can set aside the EEOC's final order only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law." 42 U.S.C. § 2000e-16c(d)(1).

The majority concludes that Knight's retaliation claim is barred by *Mattern v. Eastman Kodak Company*, 104 F.3d 702 (5th Cir. 1997). I respectfully disagree. In *Mattern* this court concluded that Title VII only provides protection for "ultimate employment decisions" and that "'[u]ltimate employment decisions' include acts 'such as hiring, granting leave, discharging, promoting, and compensating'." *Id*. at 707.

There are three reasons why I conclude that the EEOC's decision finding retaliation, and awarding attorneys' fees and damages, should be affirmed. First, the Fifth Circuit has determined that GERA is broader than Title VII. In 1981 this court in the case of *Porter v. Adams*, addressed the federal statute incorporated in GERA as it applies to federal employees and held:

> The draftsmanship of § 717 is different from that of the two sections in Title VII that prohibit discrimination by private employers. Section 717 is drafted broadly. It states: "All personnel actions . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." Sections 704 and 705, 42 U.S.C. §§ 20003-3 and 20003-4, are more narrowly drawn. There is no general proscription against discrimination. Rather, those sections make unlawful only specific types of employment discrimination by private employers. The reasonable conclusion, therefore, is that by drafting § 717 to prohibit "any discrimination", Congress intended to bar the federal government from engaging in all those forms of discrimination identified in §§ 703 and 704, and others as well.

639 F.2d 273, 277-78 (5th Cir. 1981) (emphasis added). Thus, the Fifth Circuit has ruled that the GERA language prohibiting discrimination is broader than the language in Title VII. As this court

21

in *Mattern* pointed out "(No authority need be cited for the necessary and longstanding rule that, absent a change in the law, a decision by our court, is binding on subsequent panels.)" 104 F.3d at 707.

The second reason I conclude that Knight's retaliation claim is not barred is because of the deference this court owes to the EEOC determination.[**] As already noted, we can set aside the EEOC's final order only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law." 42 U.S.C. § 2000e-16(c)(d)(1).[***] As this court in a previous case held:

> It matters not that the Department's interpretations were adjudicative decisions, rather than purely prospective rulemaking. "Congress has long been aware of the common practice of both courts and agencies to make binding policy through case-by-case adjudications." Any agency's interpretation need not occur in the context of formal rulemaking, so long as it is the considered and final policy decision of the agency. . . . Even the adjudicative interpretations of policy-making agencies are entitled to *Chevron* deference.

*Microcomputer Technology Institute v. Riley*, 139 F.3d 1044,1047 (5th. 1998)(citations omitted). *See also* **EEOC v. Commercial Office Products Company**, 486 U.S. 107, 115 (1988) ("[I]t is axiomatic that the EEOC's interpretation of Title VII, for which it has primary enforcement responsibility, need . . . . only be reasonable to be entitled to deference.").

The EEOC in this case, found as already noted, that Knight's retaliation claim was proven, and that "the attempted arrest of a spouse by a named discriminating official is without question

---

[**]Title VII claims are tried *de novo* by district courts. GERA cases, in contrast, are tried before an ALJ, can then be appealed to the EEOC, and may be appealed from the EEOC directly to appellate courts based on the record before the EEOC. While district court decisions are appealed to the circuit court in which the district court sits, EEOC decisions are appealed to the various circuits around the country.

[***]The majority opinion argues that the deference owed to the EEOC decision was not raised by Knight, nevertheless, the majority opinion, as does this dissent, analyzes the facts of this case under this deferential standard.

22

an act which would 'reasonably be likely to deter the charging party, or others from engaging in protected activity.'" The EEOC noted that "[a]s set forth in the EEOC Compliance Manual, § 8, (Retaliation R. at 8-9) (May 1998), protection against reprisal extends to employees who are closely associated, such as spouses, where for example one spouse engages in a protected activity and the employer retaliates against the other spouse as a consequence." It is hard to imagine a more effective act of retaliation than trying to get a spouse, the only breadwinner in the family of a terminated employee, fired.

Finally, the Supreme Court in *Robinson v. Shell Oil Company*, 519 U.S. 337 (1997), decided shortly after *Mattern* was decided, limited *Mattern* to some degree. *Robinson* held that a terminated employee could bring a post-employment retaliation suit against the employee's former employer for giving an unfavorable letter of reference. *Id*. at 339. Justice Thomas wrote for a unanimous Supreme Court:

> [P]etitioner argues that the word "employees" includes former employees because to hold otherwise would effectively vitiate much of the protection afforded by § 704(a). This is also the position taken by the EEOC. According to the EEOC, exclusion of former employees from the protection of § 704(a) would undermine the effectiveness of Title VII by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining to the EEOC, and would provide a perverse incentive for employers to fire employees who might bring Title VII claims. Those arguments carry persuasive force given their coherence and their consistency with a primary purpose of antiretaliation provisions: Maintaining unfettered access to statutory remedial mechanisms.

*Id.*, at 345-346. (citations omitted).

As noted, *Mattern* held that only "ultimate employment decisions" are covered by Title VII. Consequently *Mattern* would exclude any postemployment protection for retaliation, since you cannot have an ultimate employment decision after employment is terminated. The holding in

*Robinson* could hardly be more explicit–postemployment acts of retaliation are covered by Title VII, and therefore compensable. *Mattern* is in direct conflict with *Robinson* as to postemployment claims. Accordingly, *Mattern* was modified by *Robinson,* certainly to the extent that postemployment retaliation claims are cognizable.

Ostracism by co-workers is usually not an adverse employment action that will sustain a retaliation claim. *Manett v. Bank of America*, 339 F.3d 792, 803 (9th Cir. 2003); *Scusa v. Nestle U.S.A. Co., Inc*., 181 F.3d 958, 969, (8th Cir. 1999); *Parkins v. Civil Constructors of Illinois Inc.*, 163 F.3d 1037, 1039 (7th Cir. 1998). However, the EEOC in this case found more than just ostracism by co-workers. The EEOC found that Christian's "frequent remarks to [Knight] that she was untrustworthy and disloyal, suggesting that her job depended on her keeping quiet about the sexual harassment claim . . . ." was proof of his intent to retaliate. This was a direct threat of retaliation made by Christian to Knight. When Knight quit, rather than submit to more harassment, Christian sought to get Knight's spouse fired. If an employer's attempt to have a spouse of a former employee fired because the former employee exercised GERA rights, does not constitute retaliation, GERA retaliation protection is toothless. It is hard to imagine a more classic example of retaliation than attempting to get a former employee's spouse fired. It was certainly a much more serious act of retaliation than the negative reference letter at issue in *Robinson*.

Based on the foregoing I would affirm the EEOC decision finding that Christian's direct threats to Knight that her job depended on her keeping quiet about the sexual harassment, together with Christian's attempt to have Knight's husband terminated from his employment is

24

sufficient basis to constitute a claim of retaliation under GERA.  Accordingly, I respectfully

dissent as to that portion of the majority opinion holding to the contrary.