RHESA HAWKINS BARKSDALE, Circuit Judge:
Lacking jurisdiction over Kyle Knight’s cross-petition, the sole issue at hand is whether, under the Government Employee Rights Act (GERA), 42 U.S.C. § 2000e-16a to 16c (formerly codified at 2 U.S.C. §§ 1201, 1202, 1220), the County and former justice of the peace David Christian (jointly, the County) were properly held liable by the EEOC for claimed retaliation against Knight. That decision had two factual bases: ostracism during Knight’s employment; and a letter written by Christian, after Knight’s resignation, critical of Knight’s husband. Neither basis was the ultimate employment decision required for retaliation. PETITION GRANTED; CROSS-PETITION DISMISSED.
I.
Christian was elected a justice of the peace in 1991. That year, he hired Knight as one of his five clerks. Knight resigned in November 1996 and filed a complaint with the EEOC that month (the letter at issue was written the next month); the complaint was amended to state a claim under GERA.
The complaint was referred by the EEOC to an administrative law judge (ALJ), who understood the complaint as presenting two claims. Knight alleged: Christian had created a hostile work environment through conduct constituting sexual harassment; and, after she complained about that conduct to Christian and to a county official, Christian retaliated against her. There were five predicates for the retaliation claim. Three of them (not at issue here) were: failure to promote; placing Knight on probation; and constructive discharge. At issue are two bases: ostracism; and the December 1996 letter from Christian to the sheriff about Knight’s husband. The facts behind each are described infra.
The ALJ ruled in favor of the County on all claims; Knight appealed to the EEOC. It affirmed the ALJ on: no sexual harassment; and no retaliation due to either constructive discharge, failure to promote, or probation. The EEOC partly reversed the ALJ on the retaliation claim, however, ruling that Christian had retaliated against Knight in ostracizing her and in writing the letter. The final decision, issued on 2 July 2003, awarded Knight $20,500 in compensatory damages; $18,952.50 in attorney’s fees; and $2759.73 in costs.
II.
Before addressing the County’s petition for review, we address Knight’s cross-petition. Because Knight filed a cross-petition, the Respondent EEOC did not file a brief, stating: “The cross-petitions assure that the adverse positions of the real parties in interest in this matter will be ventilated before the Court”. Nevertheless, because of our pre-oral argument jurisdic *688 tional concerns about the cross-petition, we obtained supplemental briefing from the County, Knight, and the EEOC on that issue.
A.
The County filed its petition on 27 August 2003. On 16 September 2003, our court received two documents from Knight: (1) a combined cross-petition for review, application to enforce, and motion for leave to intervene; and (2) a motion for extension of time to file the cross-petition. On 13 October, the motion to intervene and the motion for extension of time were granted; accordingly, the cross-petition was filed on 14 October.
The EEOC’s decision in favor of Knight was pursuant to its jurisdiction over complaints brought under GERA. 42 U.S.C. § 2000e-16c(b)(1). Judicial review of the EEOC’s 2 July 2003 decision is pursuant to “chapter 158 of Title 28”. 42 U.S.C. § 2000e-16c(c). Under chapter 158, there is a 60-day period to file a petition for review of an agency order. 28 U.S.C. § 2344. That period “is jurisdictional and cannot be judicially altered or expanded”. Texas v. United States, 749 F.2d 1144, 1146 (5th Cir.), cert. denied sub nom. Interstate Commerce Comm’n v. Texas, 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985).
Sixty days from the EEOC’s 2 July 2003 decision was Sunday, 31 August 2003; the following day was Labor Day. Therefore, a timely petition for review of the EEOC decision had to be filed no later than 2 September 2003. Fed. R.App. P. 26(a)(3), (4). Our court did not receive the cross-petition until 16 September 2003, and it was not filed until 14 October 2003. Assuming arguendo that the 16 September receipt date was the relevant date, it was outside the 60-day period.
The absence of jurisdiction is clear from the preceding. Nevertheless, some of the jurisdictional assertions made by Knight will be addressed. First, we may, of course, notice jurisdictional defects sua sponte. E.g., Weekly v. Morrow, 204 F.3d 613, 615 (5th Cir.2000).
Second, our ability to consider jurisdiction is in no way hampered by the 13 October 2003 order granting Knight’s motion to extend time to file the petition. We have most commonly confronted this issue when, after a motions panel denies a motion to dismiss for lack of jurisdiction, a merits panel dismisses on jurisdictional grounds. E.g., Mattern v. Eastman Kodak Co., 104 F.3d 702, 704 (5th Cir.1997), cert. denied, 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997); Browning v. Navarro, 887 F.2d 553, 557 (5th Cir.1989); see also Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc., 746 F.2d 278, 283 n. 2 (5th Cir.1984), on reh’g, 784 F.2d 665 (5th Cir.1986). As Harcon Barge stated: “A denial by a motions panel of a motion to dismiss for want of jurisdiction ... is only provisional”. Id. No authority need be cited for the fact that jurisdiction is always at issue; without it, a court is powerless to act. In this instance, no judicial authority can extend the time for filing the petition. See In re Bass, 171 F.3d 1016, 1022 (5th Cir.1999) (“All federal courts are courts of limited jurisdiction which, for the most part, derives from statutory grants of the Congress.”).
Third, Knight cannot rely on her timely intervention in order to have our court review matters outside the scope of the County’s petition. “If we permit an inter-venor to raise additional issues for review, we contravene the sixty-day filing limit ... by permitting filings as late as 90 days after the order.... ” United Gas Pipe Line Co. v. FERC, 824 F.2d 417, 436 (5th Cir.1987) (such 90 days based on adding *689 60-day period for petition to 30-day period for intervention). United Gas held:
Thus, intervenors in FERC review proceedings are bound by the issues raised in the petitions for review. With regard to the issues raised in the petitions, in-tervenors may fully argue for or against the Commission’s position. However, the intervenors may not challenge aspects of the Commission’s orders not raised in the petitions for review.
Id. at 437; see also Texas Office of Public Utility Counsel v. FCC, 183 F.3d 393, 421 n. 39 (5th Cir.1999). But see Kansas City Southern Industries, Inc. v. ICC, 902 F.2d 423, 434-35 (5th Cir.1990). The same is true in this review of an EEOC order.
Although Knight’s cross-petition was untimely and must be dismissed, her motion to intervene was timely; as intervenor, she may, of course, address issues raised by the County’s petition. (Again, because of Knight’s cross-petition, the EEOC did not file a brief.) Knight’s application to enforce the EEOC order is a nullity because there is no statutory basis for jurisdiction over such an application.
B.
The County claims the EEOC’s final decision was incorrect because neither the ostracism nor the letter was an ultimate employment decision. It contends further that Knight lacks Article III standing to complain about the letter, because it only disparaged her husband. We address the GERA framework; then the County’s standing argument; and, finally, the contention that the factual bases for the .retaliation rulings are insufficient.
Our standard of review is set by GERA. In the light of the issues raised by the County, we can set aside the EEOC’s final order only'if it was “arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law”. 42 U.S.C. § 2000e-16c(d)(l).
1.
GERA provides protection against workplace discrimination to certain individuals exempted from protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Although Title VII’s familiar protections extended to “employees”, Title VII’s definition of that term excluded certain groups. Pertinent to this case, Title VII provides:
The term “employee” means an individual employed by an employer, except that the term “employee” shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer’s personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the[1] constitutional or legal powers of the office.
42 U.S.C. § 2000e(f) (emphasis added).
GERA, originally adopted as Title III of the Civil Rights Act of 1991, provides protection for those excluded from the definition of “employee”. Closely mirroring the language from Title VII’s above-quoted § 2000e(f), GERA provides that certain individuals (pérsonal staff; those who serve at policymaking level; advisers on exercise of constitútional or legal powers) shall receive the “rights, protections, and remedies provided pursuant to [42 U.S.C.’ §] 2000e-16b”. 42 U.S.C. § 2000e-16c(a). In turn, § 2000e-16b provides: “All personnel actions affecting ... the State employees described in [42 U.S.C. §] 2000e-16c ... shall be made free from any discrimination based on ... race, color, religion, sex, or national origin, within ■ the meaning of section 2000e-16....” Id. § 2000e-16b(a) (emphasis added). Section *690 2000e-16, found in the 1972 amendments to Title VII to provide protection for federal employees, provides: “All personnel actions affecting employees or applicants for employment ... shall be made free from any discrimination based on race, color, religion, sex, or national origin”. 42 U.S.C. § 2000e-16.
Christian was an elected official; Knight, a member of his personal staff. Cf. Clark v. Tarrant County, Texas, 798 F.2d 736, 742 (5th Cir.1986) (factors in personal staff exemption). Therefore, any relief was under GERA and its administrative procedure.
In the proceeding before the EEOC, the County conceded that GERA provides a claim for retaliation. For the first time in its reply brief here, however, it contends: (1) GERA does not provide a claim for retaliation; and (2) this contention goes to the EEOC’s jurisdiction and, therefore, could be considered for the first time on appeal (not to mention, for the first time in a reply brief).
The line between a jurisdictional and merits question (ie., claim) can be blurred. See, e.g., Arbaugh v. Y&H Corp., 380 F.3d 219, 222-26 (5th Cir.2004) (in Title VII context, applying precedent that threshold number of employees was a jurisdictional matter in district court). If we were to conclude that GERA did not provide a claim for retaliation, we would have to determine whether the issue is a matter of merits (subject to waiver) or jurisdiction (not subject to waiver).
Our precedent compels the conclusion that GERA provides a claim for retaliation. In Porter v. Adams, 639 F.2d 273 (5th Cir. Unit A 1981), we considered 42 U.S.C. § 2000e-16; as noted, that section protects certain federal employees from employment discrimination. (As also noted, this section was incorporated by GERA.) Section 2000e-16 does not specifically prohibit retaliation (or “reprisals”, as Porter terms it). It does provide, however, that “[a]ll personnel actions ... shall be made free from any discrimination based on race, color, religion, sex, or national origin”. 42 U.S.C. § 2000e-16 (emphasis added). Comparing § 2000e-16 (general ban on discrimination in federal employment) with other provisions (bans on specific forms of discrimination, including retaliation, by private employers), Porter held:
The reasonable conclusion, therefore, is that by drafting [§ 2000e-16] to prohibit [the above-emphasized] “any discrimination”, Congress intended to bar the federal government from engaging in all those forms of discrimination identified in §§ 703 and 704 [of Title VII], and others as well. Furthermore, this Court has held, although in a slightly different context, that the 1972 amendments extending the protections of Title VII to federal employees ... were intended to give federal employees the same rights as private employees.
Porter, 639 F.2d at 277-78 (emphasis added). See also Ayon v. Sampson, 547 F.2d 446, 450 (9th Cir.1976) (“When these sections are read together, it is clear that Congress incorporated the protections against retaliation in its enactment of § 2000e-16.”).
In short, § 2000e-16 bars retaliation. And, as noted again above, the GERA provision at issue, 42 U.S.C. § 2000e-16b, incorporates § 2000e-16. That GERA provision, § 2000e-16b, states: “All personnel actions ... shall be made free from any discrimination based on ... race, col- or, religion, sex, or national origin, within the meaning of section 2000e-16 of this title 42 U.S.C. § 2000e-16b (emphasis added). Therefore GERA makes retaliation, within the meaning of Title VII, un *691 lawful. See Haddon v. Executive Residence at the White House, 313 F.3d 1352, 1356-57 (Fed.Cir.2002) (interpreting GERA’s § 2000e-16b, when it was earlier codified as 2 U.S.G. § 1202, and stating: “It is quite sensible to conclude that Congress intended for section 1202 ... to include reprisal”.); see also 29 C.F.R. § 1603.102(a) (employees protected by GERA, “who believe they have been ... retaliated against”, may file administrative complaint under GERA).
2.
The County claims Knight lacks standing to state a retaliation claim based on the letter concerning her husband. It concedes that this issue was not raised before the EEOC, but cites cases (all involving appeals from district courts, not petitions for review from agency, decisions) that standing is always subject to being challenged. Re-stating its contention in its reply brief, it says: “[B]asic law on Article III standing requires that a party suffer an injury-in-fact in order to have standing, and this injury must be personal to the plaintiff’.
The County’s comments about Article III, while correct, are without application for the procedural posture at hand: a petition for review of an EEOC order. In other words, her attempted cross-petition aside, Knight never invoked the jurisdiction of the federal cotorts. The standing requirement is based on Article Ill’s “case or controversy” requirement. Article III governs the federal courts; it has no application to this GERA EEOC administrative proceeding. “Administrative adjudications ... are not an article III proceeding to which either the ‘case or controversy’ or prudential standing requirements apply; within their legislative mandates, agencies are free to hear actions brought by parties who might be without standing if the same issues happened to be before a federal court.” Ecee, Inc. v. FERC, 645 F.2d 339, 349 (5th Cir.1981). See also Hydro Investors, Inc. v. FERC, 351 F.3d 1192, 1197 (D.C.Cir.2003) (“Administrative agencies need not adjudicate only Article III eases and controversies, but federal courts must.”).
Instead, “[ajdministrative standing analysis must always begin with the language of the statute and regulations that provide for an administrative hearing”. Ecee, Inc., 645 F.2d at 350 (emphasis added). Because “standing” for a GERA proceeding before the EEOC is a matter of identifying the appropriate statutory harm (and not a constitutional limit on jurisdiction), we doubt whether the issue can be raised for the first time in our court. Moreover, we can readily imagine that the letter written about Knight’s husband might have been unlawful retaliation against Knight. But we do not reach either the waivability, or the merits, of Knight’s “standing” before the EEOC, because of our- resolution, infra, of the County’s third contention.
3.
Regarding ostracism, the EEOC considered Knight’s testimony that, after she complained about Christian’s conduct: he stopped speaking to her; when he had to address her, he did so in a curt and hostile tone; he told her that he no longer trusted her and considered her disloyal; he stated that her job depended on her loyalty; in order to isolate her further, he would “buddy up” with his other clerks; and he secretly tape-recorded her.
Regarding Christian’s December 1996 letter to the sheriff of Brazoria County about Knight’s husband, also a County employee, Christian recounted how he obtained a sledge hammer from Mr. Knight and used it during a re-election campaign *692 to drive posts for election signs. Christian wrote to the sheriff that, when he returned the hammer to Mr. Knight, Mr. Knight stated: “Keep the [sjledge, the county will not miss it”. According to the EEOC’s decision: “The ALJ found that ... [Christian] attempted to have [Knight’s] spouse arrested by falsely accusing him of stealing a sledgehammer that belonged to Bra-zoria County”. The EEOC apparently agreed with this finding.
As stated above, GERA provides a claim for retaliation. As discussed, GERA’s § 2000e-16b incorporates § 2000e-16, which in turn incorporates the substantive ban on retaliation found in § 2000e-3 (Title VII, for private employees). Porter, 639 F.2d at 277-78. The standard for retaliation under GERA is, therefore, the same as the familiar standard under Title VII for retaliation.
“A retaliation claim has three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action.” Mattern v. Eastman Kodak Co., 104 F.3d 702, 705 (5th Cir.1997) (emphasis added), cert. denied, 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997). The adverse employment action for the second step must be an ultimate employment decision. Id. at 707. “ ‘Ultimate employment decisions’ include acts ‘such as hiring, granting leave, discharging, promoting, and compensating’.” Id. (quoting Dollis v. Rubin, 77 F.3d 777, 782 (5th Cir.1995)). Because GERA creates a retaliation claim by a process of incorporating Title VII provisions, this “ultimate employment decision” applies in GERA cases.
Knight maintains, to the contrary, that the introductory “[a]ll personnel actions” in § 2000e-16b means that GERA extends to “retaliation” which falls short of an ultimate employment decision. First, it is unlikely that Congress would create a greater scope of protection for employees of certain state officials than it has for other employees. Second, and more importantly, the key provision in § 2000e-16b is: “All personnel ... shall be made free from any discrimination based on ... sex ... within the meaning of section 2000e-16 ”. 42 U.S.C. § 2000e-16b(a) (emphasis added).
In addition, Knight maintains that Mat-tem may not be good law, because one month after Mattem was rendered, the Supreme Court decided Robinson v. Shell Oil Co., 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). Mattem has, of course, been cited by our court post-Robbinson. E.g., Zaffuto v. City of Hammond, 308 F.3d 485, 492 (5th Cir.), on reh’g, 313 F.3d 879 (5th Cir.2002). Moreover, Robinson did not address the standard for measuring whether an adverse employment action could support an actionable retaliation claim. Robinson held: for Title VII’s anti-retaliation provision, 42 U.S.C. § 2000e-3, the bar on retaliating against “employees” included retaliating against former employees. 519 U.S. at 346, 117 S.Ct. 843. This was because such a holding was “more consistent with the broader context of Title VII” than the alternative. Id. Robinson . did not address what actions against either current or former employees could be the basis for a retaliation claim. (Along this line, Knight also maintains that, Mattem aside, the found ostracism could constitute a hostile work environment. As discussed, the ALJ and EEOC rejected the hostile work environment claim, which was premised on sexual harassment, not ostracism. In short, this new ostracism-constitutes-hostile-work-environment assertion is not properly at issue.)
*693 Although it agrees with the GERA-man-dated standard of review we have applied, the dissent maintains the EEOC’s retaliation decision should be upheld, based on the dissent’s reading of Robinson and Porter and its view that deference is owed the EEOC’s decision. Robinson and Porter are addressed supra; they do not compel our applying a different retaliation standard. Regarding deference vel non owed the EEOC’s decision, neither Knight nor the County raised that subissue. And, as noted, the Respondent EEOC elected not to file a brief. Had it done so, it might have raised that point, as well as others. In any event, pursuant to the applicable standard of review, any deference that might be owed the EEOC’s decision would not require upholding it, in the light of the different result compelled, as discussed above, by GERA’s plain language, which reflects that Congress did not intend to create a greater scope of protection for employees of certain state officials than Congress has accorded other employees.
4.
Concluding that the ultimate employment decision requirement for Title VII applies in this GERA proceeding, the last step is to determine whether the facts surrounding the ostracism or the letter were ultimate employment decisions. They are not.
For the claimed ostracism, the retaliatory activities did nothing more than affect conditions in the workplace. None of the events listed by the EEOC are akin to the “hiring, granting leave, discharging, promoting, and compensating” examples listed in Mattern, 104 F.3d at 707. (We note, as the County has repeatedly urged, that even courts that do not apply an “ultimate employment decision” standard have rejected retaliation on the basis of ostracism. E.g., Manatt v. Bank of America, NA, 339 F.3d 792, 803 (9th Cir.2003) (“Mere ostracism in the workplace is not grounds for a retaliation claim”).)
The same applies to the letter. Coming after Knight’s resignation, and not directed to making (or even influencing) any employment decision, including post-resignation, regarding Knight, the letter is not an “ultimate employment decision”.
III.
For the foregoing reasons, the County’s petition is GRANTED; Knight’s cross-petition is DISMISSED.

. Title VII claims are tried de novo by district courts. GERA cases, in contrast, are tried before an ÁLJ, can then be appealed to the EEOC, and may be appealed from the EEOC directly to appellate courts based on the record before the EEOC. While district court decisions are appealed to the circuit court in which the district court sits, EEOC decisions are appealed to the various circuits around the country.