# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30200

United States Court of Appeals
Fifth Circuit

**FILED**

March 12, 2018

Lyle W. Cayce
Clerk

SHARON INGRAM MARCHMAN,

      Plaintiff–Appellant,

v.

BRIAN E. CRAWFORD; LAWRENCE W. PETTIETTE, JR.; JAMES D.
CALDWELL; CARL V. SHARP; FREDERIC C. AMMON; J. WILSON
RAMBO; BENJAMIN JONES; ALLYSON CAMPBELL,

      Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:16-CV-515

Before HIGGINBOTHAM, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:*

      This case involves allegations by Louisiana State Judge Sharon Ingram Marchman that Defendant Allyson Campbell engaged in unethical and illegal activity during her tenure as a law clerk for Louisiana's Fourth Judicial District Court ("Fourth JDC"). Judge Marchman alleges that after an ongoing dispute among Fourth JDC judges and staff about how to address Campbell's

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30200

actions, Judge Marchman was ostracized, was accused of disclosing confidential information, and ultimately resigned from her position as chair of the personnel committee. Judge Marchman sued Campbell, Campbell's attorneys, several Fourth JDC judges, and others under 42 U.S.C. §§ 1983, 1985, and 1986 alleging retaliation for exercising her First Amendment right to free speech and a violation of her Fourteenth Amendment right to equal protection. Because Judge Marchman fails to sufficiently allege a violation of her constitutional rights, we AFFIRM.

## I. BACKGROUND

**A.     Factual Background**

Judge Marchman has been a duly-elected judge of Louisiana's Fourth JDC, including the Morehouse and Ouachita parishes, since 2000. Allyson Campbell served as a law clerk for the Fourth JDC. Judge Marchman's complaint arises from Campbell's alleged wrongdoings, her "attempts to expose Campbell's actions," and the defendants' "cover-up." Judge Marchman alleges that Judges Amman, Sharp, Jones, and Rambo ("Defendant Judges") retaliated by "threatening, intimidating, coercing, ridiculing, taunting, harassing, alienating, and making false accusations of wrongdoing against Judge Marchman," preventing her from performing her duties as chair of the personnel committee, and forcing her to resign the position.

Judge Marchman first became aware of Campbell's misconduct in 2010 when a law clerk complained to her about Campbell's absenteeism from work. She notified Defendant Judges Rambo and Amman, for whom Campbell worked, but they were dismissive of Judge Marchman's complaint. Judge Marchman insisted that Court policy required employees to work from the courthouse.

In 2012, Cody Rials complained to Defendant Judge Sharp that Campbell, Judge Sharp's law clerk, shredded Rials's proposed judgment in a

case pending before Judge Sharp. Judge Sharp investigated the incident, found Rials's complaints to be reasonable, and removed Campbell from matters involving Rials. Judge Rambo was notified, but Judge Marchman was not.

In 2013, Stanley Palowsky III filed suit in the Fourth JDC against his former business partner, W. Brandon Cork.[1] The case was assigned to Judge Rambo. On August 13, 2014, Palowsky's counsel, Sedric Banks, claimed that multiple pleadings were filed but missing and that information was withheld from Judge Rambo. Banks questioned Laura Hartt, the Court Administrator at the time, about Rials's earlier complaint. Judge Rambo discussed Banks's complaint in a personnel committee meeting, but stated that no documents were missing. Instead, the lost documents were attributed to a filing procedure error.

On April 1, 2014, Hartt became aware that she could obtain key fob reports indicating when employees entered and exited the courthouse. Hartt notified Judge Marchman, who sought authorization from the chief judge to investigate Campbell's key fob reports and corresponding video footage. The judicial administrator's office reviewed Campbell's attendance and hours logged and found that Campbell reported working hours on days she was not present. Judge Rambo and Judge Amman had approved Campbell's false timesheets. Hartt determined that an employee's absence from work when reported present was payroll fraud. On April 15, 2014, Jon K. Guice, an attorney who advised judges on the Fourth JDC, asked Hartt whether the court was an "auditee" under Louisiana law, requiring the agency head to immediately notify the legislative auditor and district attorney if she became aware of any misappropriation of funds. No such notification was ever made.

---

[1] *See Palowsky v. Cork*, Fourth JDC Docket No. 13-2059. Judge Marchman's attorneys in the instant action, Joseph Ward and Sedric Banks, also represented Palowsky in *Palowsky v. Cork*.

No. 17-30200

The judges met several times to discuss the matter, and they implemented new measures to prevent payroll fraud. Law clerks were required to sign in and out each time they entered or left the building. But Campbell refused to comply and falsified her sign-in sheet. The judges of the Fourth JDC met en banc on April 24, 2014, and agreed "to remove Campbell from the position of 'senior law clerk,' to terminate her stipend, and to suspend her for one month without pay."

After April 24, 2014, while Campbell was suspended, 52 post-conviction relief applications assigned to Campbell, but not yet processed, were discovered in her office. Campbell provided no explanation for why the applications were in her office. Campbell gave the employee who found the applications a $200 gift card. Although Judge Marchman would have been the one to investigate the incident as head of the personnel committee, she recused herself on June 17, 2014, from matters involving Campbell because Campbell was rumored to support an electoral opponent to Judge Marchman. Defendant Judge Jones discussed the issues at a personnel committee meeting on July 8, 2014, but no action was taken against Campbell.

On August 10, 2014, Judge Marchman first heard of Rials's earlier complaints regarding Campbell. Rials read a column in a local newspaper, *The News-Star*, authored by Campbell. Rials interpreted the column as "goading him" with the fact that Campbell shredded his document and evaded punishment. Rials complained to Judge Marchman, and Judge Marchman notified the chief judge. The chief judge directed Rials to submit a written complaint to the court. The investigation into Campbell was reopened, and Campbell admitted to shredding the document, but no action was taken against her.

The Fourth JDC met en banc on September 12, 2014, to discuss the issues related to Campbell. Judge Marchman was not present, but voted by

4

proxy to terminate Campbell. The other judges decided instead to reprimand Campbell rather than terminate her.

On September 22, 2014, Banks questioned the thoroughness of the investigation into his complaints. He also asked about "sealed evidence of criminal activity" that Banks provided Judge Rambo "but which still had not been seen by Judge Rambo weeks later." On October 23, 2014, Palowsky filed a motion to recuse Judge Rambo from presiding over *Palowsky v. Cork*, which Judge Rambo granted. Campbell e-mailed Judge Sharp in November 2014 requesting that he contradict Rials's allegations. In an e-mail response, Judge Sharp stated he found no misconduct, and that Campbell never shredded anything.

Around December 2014, the legislative auditor discovered that some employees were paid for time that they had not actually worked. The judges held a special meeting to discuss the issue. Judge Jones retired from the bench on December 31, 2014, replacing Hartt as Court Administrator after she resigned. Between February and March 2015, Johnny Gunter, a reporter with another local paper, *The Ouachita Citizen*, submitted a series of public records requests to the court requesting records related to Campbell, including personnel records and timesheets. The Fourth JDC only partially produced the requested documents, citing employee privacy. On March 3, 2015, *The News-Star* reported that some Fourth JDC employees might have been paid for hours which they had not worked.

The judges of the Fourth JDC met again on March 13, 2015. Judge Marchman again moved to terminate Campbell, but no one seconded her motion. Judge Amman "screamed" at Judge Marchman that "she only wanted to fire Campbell because of what was being written . . . in the newspapers." The judges also discussed the public records requests from *The Ouachita Citizen*. Judge Jones informed the judges that before the meeting, Campbell

gave him a folder with three documents. The documents contained "outright accusations and thinly-veiled threats against Judge Marchman," a statement that Campbell had never worked on the *Palowsky v. Cork* case, and a statement that Judge Rambo had informed the attorneys that Campbell had not worked on the case. This was the first time Judge Marchman saw these documents.

On March 20, 2015, Gunter filed a criminal complaint against the court for its failure to fully comply with his public records requests. At an emergency meeting not attended by Judge Marchman, the judges decided to file a petition for declaratory judgment against *The Ouachita Citizen* seeking a ruling that some of the requests contained confidential material that should not be disclosed.[2] On April 14, 2015, the judges discussed what documents to produce to the presiding ad hoc judge in the declaratory judgment action. Judges Winters and Jones "were adamant that they would only produce the Rials letter and an outside consultant's report." Judge Jones stated: "There will be no testimony. Testimony will not be good for us," in reference to an upcoming hearing. Judge Marchman repeatedly, but unsuccessfully, urged Judge Winters to reconsider this position and instead produce all documents related to Campbell.

On May 19, 2015, the ad hoc judge held a hearing at which Campbell's counsel, not a defendant in this action, and Guice argued that documents related to Campbell were not subject to production. Guice and Campbell's counsel also argued that there were no eyewitnesses to Campbell's actions. But Judge Marchman alleges that Guice "knew full well that was not the case."

---

[2] *See Winters v. Hanna Media, Inc.*, Fourth JDC Docket No. 15-0770. Winters, on behalf of the Fourth JDC, argued that "Campbell's right to privacy with regard to her employment file was stronger than the public's right to know if its tax funds were being used to pay someone who was accused of committing payroll fraud."

No. 17-30200

The ad hoc judge eventually ruled that the Fourth JDC's response to the public records request was proper.

On July 22, 2015, now-Chief Judge Winters and Defendant Judge Jones, serving as Court Administrator, met with Judge Marchman to request her recusal from an investigation of an unnamed employee. Judge Marchman refused, stating that she would not recuse herself unless they provided an explanation. Judge Marchman felt it was "abundantly clear" that "she was being prohibited from doing her job as the chair of the personnel committee." She had to "get permission from the chief judge or Defendant Jones for anything she needed to do" and "was not allowed to do anything without Judge Jones' involvement, and he became the *de facto* head of the personnel committee." Because Judge Jones concealed problems from her and the personnel committee, Marchman resigned from her position as chair and member of the committee on July 27, 2015.

Palowsky filed a civil suit against Campbell in state court accusing her of criminal conduct in destroying or otherwise improperly handling documents in *Palowsky v. Cork*.[3] Then-Louisiana Attorney General Caldwell appointed Pettiette to serve as Special Assistant Louisiana Attorney General to represent Campbell. Campbell also retained a private attorney, Crawford, to represent her. Defendant Judges' "hostile and demeaning treatment of Judge Marchman continued," with the conflict between Judge Marchman and Campbell being referred to as a "cat fight." On August 10, 2015, Judge Sharp accused Judge Marchman of leaking information to Palowsky in the *Palowsky v. Cork* case.

On August 17, 2015, Palowsky served Judges Sharp, Jones, Winters, and Marchman with subpoenas duces tecum to produce documents related to the investigation of Campbell in connection with an upcoming hearing to recuse

---

[3] *See Palowsky v. Campbell*, Fourth JDC Docket No. 15-2179.

7

the Fourth JDC from *Palowsky v. Cork*. Guice filed a broad motion to quash that arguably included Judge Marchman, "even though she had not sought relief." Judge Marchman confronted Judge Sharp about the subpoena, and Judge Sharp told Judge Marchman that he granted the motion to quash after discussing the matter with Judge Jones. Judge Marchman and Judge Sharp apparently agreed that the order quashing the subpoena did not apply to Judge Marchman. On August 20, 2015, Judge Sharp presided over Palowsky's motion to recuse the Fourth JDC from *Palowsky v. Cork*. At the hearing, Judge Marchman spoke up to make her return on the subpoena duces tecum. In response, Judge Sharp "spoke to Judge Marchman in a threatening tone and accused her of misinterpreting or 'misremember[ing]' what he had said the day before." Judge Sharp then stated, "[c]omply with the subpoena if you wish. Give it to the litigants." Judge Sharp directed Palowsky's counsel to "do with it what you will." Guice then approached Judge Sharp and had an off-the-record discussion before Judge Sharp terminated the hearing.

Subsequently, on September 2, 2015, Judge Sharp told Judge Marchman that he intended to request that she be admonished at an upcoming en banc meeting for "that little stunt she pulled in his courtroom the other day." The next day, Judge Rambo "glared at [Marchman], refused to speak to her, and [intentionally] walked into [her] as he was getting off the elevator." At the en banc meeting on September 4, there was a matter marked "confidential" on the agenda, but Judge Sharp passed the matter, and no formal disciplinary action was taken against Judge Marchman.

On November 2, 2015, Campbell and her attorneys, Defendants Crawford, Pettiette, and Caldwell, filed pleadings in *Palowsky v. Campbell* accusing Judge Marchman of "improperly disclosing information about Campbell." Judge Marchman alleges that Defendant Guice "encouraged and worked with Defendant Judges' counsel to make these false allegations against

Judge Marchman." The attorneys asserted that in her compliance with the subpoena duces tecum, Judge Marchman disclosed Campbell's confidential information in violation of the ad hoc judge's order in *Winters v. Hanna Media.* Judge Marchman disputed the allegations, and she claimed that the only disclosure of Campbell's personnel records was in response to a valid subpoena duces tecum.

On December 4, 2015, during the court's monthly en banc meeting, Judge Amman sought a new local rule requiring court approval for all photographs and video taken at the courthouse. Judge Marchman claims that Judge Amman's motion was designed to retaliate against her for the positive press she was receiving. The motion passed as modified to require approval by the chief judge only.

In a January 2016 e-mail exchange, Chief Judge Winters requested that Judge Sharp and another judge notify Judge Marchman of committee meetings that were called. Judge Sharp replied that "he was not willing to notify Judge Marchman of meetings and that he would not serve on any committees with her." Judge Marchman alleged that Judge Sharp intended to "undermine [her] authority and standing as a duly-elected judge." Defendant Judges and Campbell "continue to retaliate" against Judge Marchman. Judge Marchman claims that she was singled out for disparate treatment, and is a "virtual pariah at the courthouse" "[s]imply because [she] tried to do the right thing and stop the cover-up of Campbell's payroll fraud and document destruction." She also alleges that she has "become extremely uncomfortable in her place of work," is "ignored," and is "being disparaged in the courthouse and in the community."

No. 17-30200

## B.    Procedural Background

Judge Marchman filed suit against Defendant Judges, Crawford, Pettiette, Caldwell, Campbell, and Guice[4] seeking monetary damages under 42 U.S.C. § 1983, alleging that defendants deprived her of her First Amendment right to freedom of speech and her Fourteenth Amendment right to equal protection. She also brought claims under 42 U.S.C. § 1985, claiming that defendants conspired to violate her rights, and § 1986, claiming that defendants refused to stop the conspiracy. Her amended complaint also included claims under 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983 for injunctive relief to prevent future violations of her First and Fourteenth Amendment rights and declaratory relief that defendants' past actions violated the First and Fourteenth Amendments. Finally, Judge Marchman brought a claim for attorney's fees under 42 U.S.C. § 1988.

Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6). On February 17, 2017, the trial court granted all Rule 12(b)(6) motions to dismiss. The court concluded that Judge Marchman failed to state a claim because she did not allege any violation of her constitutional rights, and dismissed her claims with prejudice. Judge Marchman timely appealed.

## II. STANDARD OF REVIEW

We review a district court's grant of a 12(b)(6) motion to dismiss de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) (quoting *Toy v. Holder*, 714 F.3d 881, 883 (5th Cir. 2013)). Generally, a court ruling on a motion to dismiss "may rely only on the complaint and its proper attachments." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286

---

[4] Judge Marchman and Guice reached a settlement agreement. Guice did not participate in this appeal.

10

(5th Cir. 2006). But a court may rely on "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff pleads facts "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[R]ecitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. DISCUSSION

Section 1983 provides a cause of action against state actors who violate an individual's rights guaranteed under federal law. 42 U.S.C. § 1983. To prevail on her § 1983 claim, Judge Marchman must first show a constitutional violation. *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*, 855 F.3d 681, 687–88 (5th Cir. 2017) (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)). Judge Marchman's complaint alleges two possible violations of her constitutional rights by defendants. First, that defendants retaliated against her for exercising her First Amendment right to free speech when she "tried to do the right thing and stop the cover-up of Campbell's payroll fraud and document destruction." Second, that defendants violated "her Fourteenth Amendment right to equal protection by singling her out for unfavorable treatment without adequate justification." The district court considered and dismissed her equal protection claim. Judge Marchman does not appeal the district court's ruling on her Fourteenth Amendment claim. The survival of Judge Marchman's complaint thus depends on the viability of her First Amendment claim.

No. 17-30200

Defendants argue that Judge Marchman's § 1983 claim fails because she has not shown any violation of her First Amendment rights. The district court concluded that "[a]t most, taking Marchman's allegations as true, some Defendants' actions in the instant matter may constitute unfriendly, rude, or perhaps less than professional conduct . . . . These actions simply do not constitute adverse employment actions under the relevant jurisprudence." We agree. Judge Marchman fails to allege any retaliation for exercising protected speech under the First Amendment.

Judge Marchman claims that she meets the standard for First Amendment claims by public employees established in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), but she also argues that her claim should instead be governed by an alternative framework. First, she contends that her response as a witness to a lawful subpoena duces tecum was speech as a private citizen. Second, she claims First Amendment protection as an elected official as determined by this Court in *Jenevein v. Willing*, 493 F.3d 551 (5th Cir. 2007).

In a thorough and well-reasoned opinion, the district court addressed Judge Marchman's arguments that her First Amendment claim is governed by an alternative framework, but it did not decide which framework applied. We need not repeat that analysis here, and we similarly need not decide which framework governs Judge Marchman's claim. Under any retaliation framework, Judge Marchman failed to allege an adverse action in response to the speech claimed as protected.

For public employees, adverse action is an element that must be shown to establish a retaliation claim. *See Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016). For private citizens, the "requirement of an adverse employment action serves the purpose of weeding out minor instances of retaliation." *Keenan v. Tejeda*, 290 F.3d 252, 258 n.4 (5th Cir. 2002) (citing *Colson v. Grohman*, 174 F.3d 498, 510, 514 (5th Cir. 1999)). Adverse actions

include "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Tex. Dep't of Criminal Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) (citation omitted); *see also Sharp v. City of Hous.*, 164 F.3d 923, 933 (5th Cir. 1999).[5] The action must be objectively adverse; "[a] plaintiff's subjective perception that a demotion has occurred is not enough." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007) (quoting *Forsyth v. City of Dall., Tex.,* 91 F.3d 769, 774 (5th Cir. 1996)). And cases involving elected officials impose strict scrutiny for content-based regulation of speech by elected officials when there are formal consequences in the form of censure or reprimand. *See Jenevein*, 493 F.3d at 557–58, 560 (Order of Public Censure by the Texas Commission on Judicial Conduct imposed on an elected judge); *Rangra v. Brown*, 566 F.3d 515, 520–22 (5th Cir. 2009) (criminal penalties imposed on elected city council members), *vacated on other grounds en banc*, 584 F.3d 206 (5th Cir. 2009); *Scott v. Flowers*, 910 F.2d 201, 204–05, 212 (5th Cir. 1990) (formal public reprimand of an elected state justice of the peace by Texas Commission on Judicial Conduct). "[M]ere criticisms do not give rise to a constitutional deprivation for purposes of the First Amendment." *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997).

We find that Judge Marchman has not alleged any formal reprimand or sanction for exercising her First Amendment rights. First, she claims that she was "publicly accused [] of illegally disclosing documents" by filing pleadings in *Palowsky v. Campbell*, and accused by Judge Sharp of leaking information to Palowsky. But the filing of pleadings alone cannot support a retaliation claim. "[F]alse accusations, verbal reprimands, and investigations [are] not

---

[5] The Supreme Court has suggested that the scope of harm actionable under the First Amendment may be broader than actual or constructive discharge from employment. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 74, 75 n.8 (1990); *Sharp*, 164 F.3d at 933. This Court has declined to expand actionable adverse actions beyond this list while recognizing that it is not exclusive. *See Benningfield v. City of Hous.*, 157 F.3d 369, 376 (5th Cir. 1998).

actionable adverse employment actions." *Colson*, 174 F.3d at 511 (citing *Benningfield*, 157 F.3d at 376). Second, she argues that Judge Sharp threatened to seek Judge Marchman's admonishment at an en banc meeting. Judge Marchman's admonishment by her colleagues could have constituted adverse employment action. *See Scott*, 910 F.2d at 212–13; *Colson*, 174 F.3d at 511. But Judge Sharp never introduced such a motion, the judges never considered a motion to admonish, and she was never formally reprimanded.

Third, Judge Marchman alleges that, as a result of defendants' interference with her duties, refusal to serve on committees with her, and request to recuse herself from an investigation, she was forced to resign as member and chair of the personnel committee. Resignation could potentially support a First Amendment claim as a constructive demotion. *See Sharp*, 164 F.3d at 934. According to Judge Marchman, she resigned "after being pressured to recuse herself from a particular investigation, after having existing problems concealed from her, after having Defendant Judges refuse to discover or address potential problems, after being prohibited from doing her job without getting approval from Defendant Judge Jones first." But defendants did not remove Judge Marchman from this position, and they lacked the power to do so. And Judge Marchman was pressured to recuse herself by Chief Judge Winters, who is not a defendant in this action, and Judge Jones, who at the time was the Court Administrator, an employee and subordinate of the judges. The recusal request was not only not an adverse action, but also not an action by an employer. Judge Marchman similarly resigned her position as chair of the personnel committee before she sought to comply with the subpoena duces tecum. Thus, her compliance with the subpoena could not have motivated her recusal or resignation.

14

No. 17-30200

Finally, Judge Marchman's remaining allegations include various interactions with other judges on the Fourth JDC.[6] Many of her allegations amount to ostracism or unprofessional behavior rather than formal reprimands. This conduct may be unprofessional or perhaps even amount to a violation of state law, but that alone does not suffice to assert a constitutional violation. In the Title VII context, this Court observed that "boorish remarks and childish horseplay," though "undoubtedly offensive," were "not sufficiently severe or pervasive to create an objectively hostile or abusive work environment" and could not constitute adverse employment actions. *McCoy v. City of Shreveport*, 492 F.3d 551, 557–58 (5th Cir. 2007). Similarly, we have found that in the Title VII context, ostracism is not grounds for a retaliation claim. *See Brazoria Cty., Tex. v. EEOC*, 391 F.3d 685, 693 (5th Cir. 2004). Judge Marchman appears to highlight a disagreement among the Fourth JDC regarding how to handle professional matters. And "retaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable under § 1983." *Colson*, 174 F.3d at 513. Speaking out against perceived injustices at the risk of damaging working relationships no doubt requires substantial courage, but not every consequence suffered in connection with speech amounts to a constitutional violation.

Judge Marchman fails to show that she suffered any adverse action, a necessary element of her First Amendment retaliation claim. Thus, her § 1983 claim was properly dismissed because she failed to allege a violation of the Constitution. Accordingly, her related claims were also properly dismissed. *See*

---

[6] For example, Judge Marchman alleged that other judges on the Fourth JDC referred to the conflict between Campbell and Judge Marchman as a "cat fight," Judge Sharp spoke to Judge Marchman in a "threatening tone," Judge Amman "screamed" at her in a meeting, and Judge Rambo "glared at her, refused to speak to her, and [intentionally] walked into Judge Marchman as he was getting off the elevator." She also alleged that Judge Sharp refused to include her on his e-mails or serve on committees with her.

No. 17-30200

42 U.S.C. §§ 1985, 1986, 1988; *see also Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994) (Section 1985).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.